**Brian A. Knutsen (OSB # 112266)**
**Emma Bruden (OSB # 163525)**
KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515 (Knutsen)
(503) 719-5641 (Bruden)
brian@kampmeierknutsen.com
emma@kampmeierknutsen.com

**Peter M. ("Mac") Lacy (OSB # 013223)**
Oregon Natural Desert Association
2009 NE Alberta St., Ste. 207
Portland, OR  97211
(503) 525-0193
lacy@onda.org

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PENDLETON DIVISION

| | |
|---|---|
| **OREGON NATURAL DESERT ASS'N**, | No. 2:23-cv-01898 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **FRANK KENDALL III**, in his official capacity as the Secretary of the U.S. Department of the Air Force, and **U.S. AIR FORCE**, | |
| Defendants. | **(Environmental Matter)** |

**NATURE OF ACTION**

1.      The Owyhee Canyonlands are a national treasure, featuring miles upon miles of deep rugged canyons and rolling sagebrush steppe. This vast and largely wild landscape supports a diversity of fish and wildlife and preserves some of the darkest night skies in the country. It is an area rich with history and full of wonder, as inviting as it is foreboding, and one that deserves the highest levels of protection now and forever. Oregon Natural Desert Association ("ONDA") has been working for decades to protect, defend, and restore this unique and fragile landscape.

2.      ONDA brings this case to stop the U.S. Air Force from unlawfully discharging chaff and flares from aircraft during training exercises into waters of the United States in the Mountain Home Air Force Base's ("AFB") Paradise North Military Operations Area. The Air Force has never obtained a required permit for these ongoing discharges, despite the clear and unambiguous requirements of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*., and the fact that the metals and other materials in the chaff and flares are toxic to native fish in the Owyhee river system, including Lahontan cutthroat trout, bull trout, and redband trout.

3.      This action is a citizen suit brought under section 505 of the CWA, 33 U.S.C. § 1365. ONDA seeks: (1) a declaratory judgment that Frank Kendell III, in his official capacity as the Secretary of the U.S. Department of the Air Force, and the U.S. Air Force (collectively, "U.S. Air Force") have violated and continue to be in violation of section 301(a) of the CWA, *id*. § 1311(a), by discharging pollutants from aircraft into waters of the United States, including the Owyhee Wild and Scenic Rivers and their tributaries; (2) an order directing the Air Force to suspend or limit its training operations in the Paradise North Military Operations Area unless and until the agency secures a National Pollutant Discharge Elimination System ("NPDES") permit from the State of Oregon or other authorized NPDES permitting agency; and (3) an order that the

Air Force pay ONDA's reasonable litigation costs and attorney and expert fees related to this action.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over ONDA's claims under section 505(a) of the CWA, 33 U.S.C. § 1365(a), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1346(a)(2) (United States as Defendant). Section 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), authorizes the requested relief. The requested relief is also proper under 28 U.S.C. § 2201 (declaratory relief) and 28 U.S.C. § 2202 (injunctive relief).

5.      Section 505(a) of the CWA, 33 U.S.C. § 1365(a), waives the Air Force's sovereign immunity for ONDA's claims.

6.      In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2, ONDA notified the Air Force of its CWA violations and of ONDA's intent to sue by letters dated April 10, 2023, and August 16, 2023 ("Notice Letters"). A copy of the Notice Letters is attached to this complaint as Exhibit 1. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2(a)(3), ONDA provided copies of the Notice Letters to the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of Region 10 of the EPA, the Attorney General of the United States, and the Director of the Oregon Department of Environmental Quality ("DEQ").

7.      As of the date of this filing, the Air Force has not yet responded to either of ONDA's Notice Letters.

8.      More than 60 days have elapsed since notice was served, and the violations complained of are continuing. Neither EPA nor the state of Oregon has commenced any action constituting diligent prosecution to redress the Air Force's violations.

9.      The sources of the violations complained of are located in Malheur County, Oregon, and venue is therefore appropriate in the District of Oregon under section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

## PARTIES

10.      Plaintiff OREGON NATURAL DESERT ASSOCIATION ("ONDA") is an Oregon non-profit, public interest organization of about 14,000 members and supporters. It has offices in Portland, Oregon and Bend, Oregon. ONDA's mission is to protect, defend, and restore forever Oregon's high desert for present and future generations. ONDA actively participates in Air Force and Department of the Defense decision-making processes concerning or affecting public lands and waters in eastern Oregon. ONDA brings this action on its own behalf and on behalf of its members and staff, many of whom regularly enjoy and will continue to enjoy the public lands, waters, and resources that are adversely affected by the Air Force's discharges, for educational, recreational, spiritual, and scientific activities. ONDA has been active in monitoring ecological conditions and wilderness values on public lands affected by the Air Force's training activities in eastern Oregon, including throughout the greater Owyhee region. ONDA also participated throughout the public processes that led to the Air Force's release in 2023 of a Final Environmental Impact Statement and Record of Decision for the agency's proposal to "optimize" air space by allowing dramatically more intensive training activities throughout the Paradise North training area in southeastern Oregon.

11.    ONDA and its members use and enjoy the public lands, waters, and natural resources on and surrounding the area encompassed by the Air Force's Paradise North Military Operations Area, for recreational, scientific, spiritual, educational, aesthetic, and other purposes. They enjoy fishing, rafting, hiking, camping, hunting, bird watching, study, contemplation, photography and other activities in and around these public lands and waters. ONDA and its members also participate in information gathering and dissemination, education and public outreach, participating in agency planning processes, and other activities relating to the Air Force's activities on, over, or otherwise affecting these public lands and waters. The environmental, health, aesthetic, and recreational interests of ONDA's members have been, are being, and will be adversely affected by the Air Force's illegal discharges of pollutants and by ONDA's members' reasonable concerns related to the effects of the discharges.

12.    Defendant UNITED STATES AIR FORCE is a federal agency within the United States Department of Defense. The United States Air Force owns and operates the aircraft and conducts the training exercises that cause the discharges of pollutants subject to this complaint.

13.    Defendant FRANK KENDALL III is sued solely in his official capacity as the Secretary of the United States Department of the Air Force. As the Secretary of the United States Department of the Air Force, Secretary Kendall is responsible for ensuring that the United States Air Force complies with applicable laws.

## LEGAL FRAMEWORK

14.    The CWA is designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act attempts to achieve these goals through a regulatory scheme using permits, technology controls, and water quality-based pollution controls.

15.     The Act prohibits "the discharge of any pollutant by any person" from a point source into navigable waters unless allowed by an NPDES. *Id.* § 1311(a); *see Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000) (discharge of pollutants without permit, or in violation of permit, is illegal).

16.     NPDES permits are issued by the EPA or by a state agency authorized by EPA to administer the NPDES program. *See* 33 U.S.C. § 1342(a)–(b); *Ass'n to Protect Hammersley, Eld, and Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1009 (9th Cir. 2002). The Oregon DEQ is authorized to issue NPDES permits for discharges to waters in the state of Oregon.

17.     The Act defines the term "discharge of any pollutant" as "any addition of any *pollutant* to the waters of the [United States] from any *point source* other than a vessel or other floating craft." 33 U.S.C. § 1362(12) (emphases added).

18.     Pollutant, in turn, means "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, *munitions*, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." *Id.* § 1362(6) (emphasis added).

19.     And a "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft from which pollutants are or may be discharged . . . ." *Id.* § 1362(14).

20.     CWA jurisdiction extends to "navigable waters," a phrase defined as "the waters of the United States." *Id.* § 1362(7). This includes tributaries to navigable waters. 40 C.F.R. § 120.2(1)(ii).

21.     Ongoing violations of the CWA and NPDES permits are enforceable through the Act's citizen suit provision. 33 U.S.C. § 1365(a), (f). This provision requires citizens to send a notice letter to the EPA, the state in which the alleged violation occurs, and to the alleged violator, before bringing suit. *Id*. § 1365(b).

## STATEMENT OF FACTS

22.     The vast landscape known as "the Owyhee" stretches from the remote Sheepshead and Trout Creek Mountains of the northern Great Basin, to the broad expanses of sagebrush dissected by the Owyhee River canyonlands, to the southeastern front of the Blue Mountains, where the Malheur River emerges to join the Snake River. These are some of the most remote and wild landscapes in the lower 48 states. In fact, more than half of this remarkable region has been recognized by the U.S. Bureau of Land Management and the public as having irreplaceable wilderness values.

23.     This expanse of sagebrush steppe is a vitally important part of our national heritage. It is home to more than 350 species of fish and wildlife. This includes threatened, endangered, and sensitive species such as the greater sage-grouse, pygmy rabbit, bighorn sheep, pronghorn antelope, Columbia spotted frog, tiger salamander, Malheur springsnail, and native trout including redband, bull, and Lahontan cutthroat. These species depend both on sweeping native sage-steppe uplands and vital perennial and intermittent streams, springs, wet meadows and riparian areas that breathe life into this arid, high desert landscape and feed into hidden canyons of the Owyhee Rivers.

24.     In 1984, Congress designated 120 miles of the Main Owyhee River as a federal wild and scenic river pursuant to the National Wild and Scenic Rivers Act. In the Oregon Omnibus Wild and Scenic Rivers Act of 1988, Pub. L. 100-557, *codified at* 16 U.S.C. §

1274(a)(91), Congress added 57 miles of the West Little Owyhee and 10 miles of the North Fork Owyhee to the national wild and scenic rivers system. About 110 miles of these wild and scenic rivers are located within the Paradise North operations area.

25.     Much of the Owyhee Wild and Scenic Rivers system and its tributary streams occur within steep, rocky canyons. The Owyhee canyonlands provide habitat for over 200 species of wildlife. Several plant species within the canyonlands are classified as federal or state sensitive species or are on "watch lists." Redband trout, which have been petitioned for listing under the Endangered Species Act, inhabit the West Little Owyhee River segment of the system.

26.     The Air Force is in violation of the CWA because chaff and flares discharged from aircraft during training missions are being discharged into waters of the United States in the Mountain Home AFB's six Military Operations Areas, including the Paradise North area which spans 968,783 acres of land in southeastern Oregon. In a 2023 Final Environmental Impact Statement ("FEIS"), prepared by the Air Force as part of its "Mountain Home AFB Optimization" proposal to expand and intensify its military overflight training operations in the Owyhee region, the Air Force states that the department uses chaff and flares during training exercises to interfere with Air Traffic Control and "enemy" RADAR. Chaff consists of reflective, aluminum-coated glass fibers and is stored in canisters that contain millions of fibers that are dispensed from aircraft when a missile attack is imminent.  The fibers create a "RADAR cloud" and then drop to the ground.

27.     The Air Force has acknowledged that chaff fibers or residual matter from chaff and flares "could collect on water surfaces."  The Air Force claims in its 2023 FEIS that chaff and flares "are not considered toxic" and "would not affect ground or water quality." The department asserts that the "probability of a substantial amount" of material being deposited

"would be minuscule"—although the amount of chaff and flares permitted under the approved action "would potentially increase over baseline amounts."

28.     The Air Force states in the 2023 FEIS that the use of chaff is "covered" annually by a "Chaff Clearance Letter" that provides guidance from the Air Force and the Federal Aviation Administration. Nowhere in the FEIS does the Air Force indicate that it has ever sought or secured a CWA permit from the EPA or Oregon DEQ. The annual "Chaff Clearance Letter" is not, and cannot serve as, an NPDES permit. ONDA has reviewed the most recent such letter provided to it, dated January 6, 2022, and it contains no indication of or reference to a CWA permit.

29.     Through public comments dated November 22, 2019, October 22, 2021, and April 3, 2023, as part of the public process for the Mountain Home AFB Optimization proposal, ONDA raised this concern. ONDA informed the Air Force, through those comment letters, that the agency's ongoing and proposed Mountain Home AFB training activities were damaging fish and wildlife habitat and water resources and were in violation of the CWA. Among other concerns, ONDA pointed out that the Air Force itself has identified both aluminum and copper as elements within chaff that could cause detrimental effects to aquatic species, humans, and other wildlife. ONDA asked the Air Force to quantify the amount of copper that aquatic species and their habitats might be exposed to and resulting concentrations that could be expected in the affected water bodies under ongoing and proposed training exercises. The Air Force has not done so.

30.     Copper, aluminum, and other metals can be toxic to bull trout, Lahontan cutthroat trout, redband and other native trout at very low levels. ONDA cited numerous peer-reviewed, published studies illustrating this, in its Notice Letters.

31.     The Air Force also has observed that "[u]se of chaff over or immediately adjacent to highly sensitive areas such as Wilderness Areas, Wild and Scenic Rivers, National Parks and Monuments, and other pristine natural areas may be incompatible with the land use management objectives for those areas." Yet, the Air Force has never adequately analyzed the known and potential effects of chaff and flares on sensitive aquatic species and highly sensitive areas that occur in and around the Owyhee Canyonlands—an area that encompasses hundreds of thousands of acres of wilderness lands and almost 200 miles of protected rivers as part of the Owyhee Wild and Scenic Rivers system. All told, there are 438 miles of streams and about 4,500 surface acres of flatwater fisheries habitat in the Bureau of Land Management's 4.6 million-acre Southeastern Oregon Resource Management Plan area (which covers Mountain Home AFB's million-acre Paradise North training area) alone.

32.     Several sensitive fish species are found within this landscape, including Interior redband trout (*Oncorhynchus mykiss spp)*, Lahontan cutthroat trout (*Oncorhynchus clarkii henshawi*), and bull trout (*Salvelinus confluentus*). Bull trout and Lahontan cutthroat trout are listed as threatened species under the Endangered Species Act, and redband trout are designated as a species of concern by the U.S. Department of the Interior and the state of Oregon. According to the Bureau of Land Management, there are at least 15 native fish species that occur in this area (not to mention amphibians and aquatic invertebrates, many of which also have various state and federal special status designations).

33.     If chaff or flares are released over the Owyhee or its tributaries and other waters within the Oregon portion of the training operations area, there is a high likelihood that concerning levels of pollutants will enter the waterways that support these sensitive fish and other species. The steep, narrow canyons that many of these streams flow through will likely act

as a funnel for clouds of chaff and flares, magnifying the concentration of pollutants that will enter the water.

34.     On October 4, 2022, ONDA asked the Air Force, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *as amended*, to provide copies "of any NPDES or related permit(s) authorizing any discharge of pollutants associated with military aircraft training activities by the Mountain Home Air Force Base." In response, the agency produced five documents, all of which were associated with on-base waste and storm water treatment activities. ONDA also checked with the state of Oregon (DEQ), who indicated that they have no record of any NPDES permit for Mountain Home AFB activities occurring in Oregon.

35.     On October 19, 2023, ONDA sent another FOIA request to the Air Force, asking again for any NPDES or related permits authorizing any discharge of pollutants associated with aircraft training activities, as well as any other records related to NPDES permitting and any public comments and other correspondence, including from the Federal Aviation Administration, received between the time the Air Force issued the 2023 FEIS, in March, and the time it issued its Record of Decision approving the expanded training operations plan, in July 2023. To date, the Air Force has not released any records to ONDA.

36.     To ONDA's knowledge, the Mountain Home AFB does not have, and has never had, a required permit for discharge of pollutants into navigable waters in Oregon. In fact, the Air Force does not have, and has never had, a required CWA permit for discharge of pollutants into navigable waters in Idaho or in Nevada, either. (The Mountain Home Range Complex Airspace consists of six Military Operations Areas: the Paradise North Area in southeastern Oregon, plus the Owyhee North and Jarbridge North areas in Idaho and the Paradise South, Owyhee South, and Jarbridge South areas in Nevada.)

37.     In response to ONDA's assertion, during the Mountain Home AFB Optimization planning process, that a permit was required for discharges of chaff and flares during training exercises, the Air Force in the 2023 FEIS stated that "military aircraft are not point sources under the CWA and the National Pollutant Discharge Elimination System does not apply. There are currently no requirements under the CWA that apply to military aircraft operations." FEIS at B-188 (also selectively quoting the definition of a point source as "pipes or man-made ditches"). To date, the Air Force has not responded at all to ONDA's reiteration of this assertion in the Notice Letters.

38.     The Air Force does not have, and has not had during the prior six years, an NPDES permit authorizing discharges of pollutants to waters of the United States within Oregon associated with the Mountain Home AFB aircraft training exercises.

## CAUSE OF ACTION
## VIOLATION OF THE CLEAN WATER ACT

39.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

40.     The Air Force is in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants to navigable waters from military aircraft as described herein without NPDES permits. These violations are violations of an "effluent standard or limitation" as defined by section 505(f) of the CWA, *id*. § 1365(f). These violations occur each and every day that the Air Force releases flares, chaff or similar materials from aircraft while flying over the Owyhee River and other waters of the United States in the Mountain Home Air Force Base's Paradise North Military Operations Area in southeastern Oregon.

41.     On information and belief, these violations committed by the Air Force are continuing or are reasonably likely to reoccur. Any and all additional violations of the CWA

which occur after those described in the Notice Letter but before a final decision in this action should be considered continuing violations subject to this complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

  A. Issue a declaratory judgment that the Air Force has violated and continues to be in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants from military aircraft to waters of the United States without the authorization of NPDES permits as described herein;

  B. Issue an order enjoining the Air Force from discharging pollutants from military aircraft to waters of the United States, including the Owyhee Wild and Scenic Rivers and their tributaries, as described herein until such discharges are authorized by NPDES permits;

  C. Issue an injunction requiring the Air Force to take specific actions to evaluate and remediate the environmental harm caused by its violations;

  D. Issue declaratory and/or injunctive relief warranted to insure that, if the Air Force secures NPDES permits for discharges from military aircraft, the Air Force's CWA violations at the Owyhee Wild and Scenic Rivers and their tributaries will not recur;

  E. Grant such other preliminary and/or permanent injunctive relief as Plaintiff may request during the pendency of this case;

  F. Award Plaintiff its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorizations; and

  G.  Grant such other further relief as Plaintiff may request or the Court deems just and proper.

DATED this 15th day of December 2023.          Respectfully submitted,

s/ Brian A. Knutsen
s/ Emma Bruden

_____

Brian A. Knutsen
Emma Bruden
KAMPMEIER & KNUTSEN, PLLC


s/ Peter M. Lacy

_____

Peter M. ("Mac") Lacy
Oregon Natural Desert Association

*Of Attorneys for Plaintiff*

# EXHIBIT 1



August 16, 2023

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Secretary Lloyd J. Austin III
U.S. Department of Defense
1400 Defense Pentagon
Washington, D.C.  20301-1400

Secretary Frank Kendall
U.S. Department of the Air Force
1690 Air Force Pentagon
Washington, D.C.  20330–1670

Colonel Ernesto M. DiVittorio
Wing Commander, 366th Fighter Wing
Mountain Home Air Force Base
1740 East Fairview Ave, PMB 20
Meridian, Idaho 83642

Re:    Notice of Violations and Intent to Sue under Clean Water Act,
       33 U.S.C. § 1251 *et seq*.

Dear Secretary Austin, Secretary Kendall, and Colonel DiVittorio:

Through counsel, the Oregon Natural Desert Association ("ONDA") hereby notifies you of its intent to file suit against the U.S. Department of the Air Force and Secretary Frank Kendall in his official capacity as the Secretary of the U.S. Department of the Air Force (collectively, the "Air Force"), over the Mountain Home Air Force Base's ("AFB") ongoing violations of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. §§ 1251–1387. Through its ongoing military training exercises conducted from the Mountain Home AFB, the Air Force is violating section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants into the waters of the United States without a permit. At the expiration of 60 days from the date of this letter, ONDA intends to file suit under the CWA's citizen suit provision, 33 U.S.C. § 1365, and will seek declaratory and injunctive relief and all other relief authorized by law for these violations.

## LEGAL BACKGROUND

The CWA is designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits "the discharge of any pollutant by any person" from a point source into navigable waters unless allowed by a National

**EXHIBIT 1 - Page 1 of 14**

Pollutant Discharge Elimination System ("NPDES") permit. *Id*. § 1311(a). *See Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000) (discharge of pollutants without permit, or in violation of permit, is illegal). NPDES permits are issued by the U.S. Environmental Protection Agency ("EPA") or by a state agency authorized by EPA to administer the NPDES program. *See* 33 U.S.C. § 1342(a)–(b); *Ass'n to Protect Hammersley, Eld, and Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1009 (9th Cir. 2002). The Oregon Department of Environmental Quality ("DEQ") is authorized to issue NPDES permits for discharges to waters in the state of Oregon.

The Act defines the term "discharge of any pollutant" as "any addition of any *pollutant* to the waters of the [United States] from any *point source* other than a vessel or other floating craft." 33 U.S.C. § 1362(12) (emphases added). Pollutant, in turn, means "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, *munitions*, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." *Id*. § 1362(6) (emphasis added). And a "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft from which pollutants are or may be discharged . . . ." *Id*. § 1362(14). CWA jurisdiction extends to "navigable waters," a phrase defined as "the waters of the United States." *Id*. § 1362(7). This includes tributaries to navigable waters. 40 C.F.R. § 120.2(1)(ii).

Ongoing violations of the CWA and NPDES permits are enforceable through the Act's citizen suit provision. 33 U.S.C. § 1365(a), (f). This provision requires citizens to send a notice letter to the EPA, the state in which the alleged violation occurs, and to the alleged violator, before bringing suit. *Id*. § 1365(b). As required by the CWA, this letter provides notice of the violations that have occurred and continue to occur as a result of the Mountain Home AFB's training exercises in southeastern Oregon. *See* 40 C.F.R. § 135.3(a).

## VIOLATIONS OF THE CLEAN WATER ACT

The Air Force is in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), because chaff and flares discharged from aircraft during training missions are being discharged into waters of the United States in the Mountain Home AFB's six Military Operations Areas, including the Paradise North area which covers almost one million acres of land in southeastern Oregon. The Air Force states in its 2023 Final Environmental Impact Statement ("FEIS") for the Mountain Home AFB Optimization proposal that the department uses chaff and flares to interfere with Air Traffic Control and "enemy" RADAR. FEIS at 3-161 to -162.[1] "Chaff consists of reflective, aluminum-coated glass fibers" and is "stored in canisters that contain millions of fibers [that are] dispensed from aircraft when a missile attack is imminent." *Id*. at 3-161. The fibers create a "RADAR cloud" and then drop to the ground. *Id*.

---

[1] U.S. Dep't of the Air Force, *Final Environmental Impact Statement for Airspace Optimization for Readiness at Mountain Home Air Force Base, Idaho* (March 2023), https://www.mountainhomeafbairspaceeis.com/index.aspx.

2

EXHIBIT 1 - Page 2 of 14

The Air Force has acknowledged that "[c]haff fibers or residual matter from chaff and flares could collect on water surfaces." Draft EIS at 2-40.[2] The FEIS claims that chaff and flares "are not considered toxic" and "would not affect ground or water quality." FEIS at 2-39. The department asserts that the "probability of a substantial amount" of material being deposited "would be minuscule"—although the amount of chaff and flares permitted under the proposed action "would potentially increase over baseline amounts." *Id*. at 2-40.

The Air Force indicates that the use of chaff is "covered" annually by a "Chaff Clearance Letter" that provides guidance from the Air Force and the Federal Aviation Administration. FEIS at 3-161. Nowhere in the FEIS does the Air Force indicate that it has ever sought or secured a CWA permit from the EPA or DEQ; the annual "Chaff Clearance Letter" cannot serve as an NPDES permit. ONDA has reviewed the most recent such letter provided to us, dated January 6, 2022, and it contains no indication of or reference to a CWA permit.

The Supreme Court has confirmed that the U.S. Navy's "release of ordnance from aircraft or from ships into navigable waters is a discharge of pollutants" under the Act. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 309 (1982). Since that time, other courts have held that coal and coal dust blown off the top of moving rail cars and into navigable waters amounted to a point source discharge, *Sierra Club v. BNSF Ry. Co.*, No. 2:13-cv-00967-JCC, ECF 337 (W.D. Wash. Oct. 25, 2016), spraying of pesticides from aircraft is a discharge from a point source, *Peconic Baykeeper, Inc. v. Suffolk Cnty.*, 600 F.3d 180, 188–89 (2d Cir. 2010), spraying of pollutants from helicopters into the air, which eventually landed on navigable waters, was a discharge from a point source, *No Spray Coal., Inc. v. City of New York*, No. 00 Civ. 5395(GBD), 2005 WL 1354041, *5 (S.D.N.Y. June 8, 2005), and "aerial spraying of pesticide conducted by the Forest Service is point source pollution" and requires an NPDES permit. *League of Wilderness Defs./Blue Mtns. Biodiversity Proj. v. Forsgren*, 309 F.3d 1181, 1192–93 (9th Cir. 2002). The Air Force's release of chaff and flares into navigable waters throughout the Owyhee region fits easily into the courts' understanding of what constitutes a prohibited discharge of pollutants from a point source under the CWA.

Through public comments dated November 22, 2019, October 22, 2021, and April 3, 2023, ONDA raised this concern and informed the Air Force that the agency's ongoing and proposed Mountain Home AFB training activities were damaging fish and wildlife habitat and water resources and were in violation of the CWA. Among other concerns, ONDA pointed out that the Air Force itself has identified both aluminum and copper as elements within chaff that could cause detrimental effects to aquatic species—not to mention potential impacts to humans and other wildlife—stating that:

> sensitive aquatic species could be adversely affected by repeated, concentrated
> exposure to chaff deposition. If such an environment exists in an area proposed

---

[2] U.S. Dep't of the Air Force, *Draft Environmental Impact Statement for Airspace Optimization for Readiness at Mountain Home Air Force Base, Idaho* (July 2021), https://www.mountainhomeafbairspaceeis.com/index.aspx.

EXHIBIT 1 - Page 3 of 14

for chaff use, the presence of threatened or endangered aquatic species should be identified through consultation with the local office of the U.S. Fish and Wildlife Service and the state fish and game or fish and wildlife department. If protected aquatic species or their habitats are known to occur or could be in the area, the environmental assessment should include a quantification of the amount of copper that they might be exposed to and resulting concentrations that could be expected in the affected water bodies under the proposed action.

USAF (1997) at 163.[3] It is well established that copper, aluminum, and other metals can be toxic to bull trout, Lahontan cutthroat trout, redband and other native trout at very low levels. *See, e.g.*, Kiser *et al.* (2010) (bull trout and copper),[4] Bopp *et al.* (2008) (redband trout and copper),[5] Farag *et al.* (2011) (cutthroat trout and copper),[6] Woodward *et al.* (2011) (cutthroat trout and aluminum),[7] Book *et al.* (2019) (rainbow trout and silica).[8]

The Air Force also has observed that "[u]se of chaff over or immediately adjacent to highly sensitive areas such as Wilderness Areas, Wild and Scenic Rivers, National Parks and Monuments, and other pristine natural areas may be incompatible with the land use management objectives for those areas." USAF (1997) at 3. Yet, the Air Force failed in both its 2021 DEIS and 2023 FEIS for Mountain Home AFB to adequately analyze the known and potential effects of chaff and flares on sensitive aquatic species and highly sensitive areas that occur in and around the Owyhee Canyonlands—an area that encompasses hundreds of thousands of acres of wilderness lands and almost 200 miles of protected rivers as part of the Owyhee Wild and Scenic

---

[3] U.S. Air Force. 1997. Environmental Effects of Self-Protection Chaff and Flares. Headquarters Air Combat Command Langley Air Force Base, Virginia. *Available at* https://ntrl.ntis.gov/NTRL/dashboard/searchResults/titleDetail/PB98110620.xhtml.

[4] Kiser, T. *et al*. 2010. Impacts and Pathways of Mine Contaminants to Bull Trout (*Salvelinus confluentus*) in an Idaho Watershed. *Environmental Contamination and Toxicology* 59(2):301-11.

[5] Bopp, S.K. *et al*. 2008. Copper-induced oxidative stress in rainbow trout gill cells. *Aquatic Toxicology* 86(2): 197-204. https://doi.org/10.1016/j.aquatox.2007.10.014.

[6] Farag, A.M. 2011. Dietary Effects of Metals-Contaminated Invertebrates from the Coeur d'Alene River, Idaho, on Cutthroat Trout. *Transactions of the American Fisheries Society* 128(4): 578-592. https://doi.org/10.1577/1548-8659(1999)128<0578:DEOMCI>2.0.CO;2.

[7] Woodward, D.F. *et al*. 2011. Sensitivity of Endemic Snake River Cutthroat Trout to Acidity and Elevated Aluminum. *Transactions of the American Fisheries Society* 118(6): 630-643. https://doi.org/10.1577/1548-8659(1989)118<0630:SOESRC>2.3.CO;2.

[8] Book, F. *et al*. 2019. Ecotoxicity screening of seven different types of commercial silica nanoparticles using cellular and organismic assays: Importance of surface and size. *NanoImpact* 13: 100-111. https://doi.org/10.1016/j.impact.2019.01.001.

EXHIBIT 1 - Page 4 of 14

Rivers system. All told, there are 438 miles of streams and about 4,500 surface acres of flatwater fisheries habitat in the Bureau of Land Management's 4.6 million-acre Southeastern Oregon Resource Management Plan area (which covers Mountain Home AFB's Paradise North training area) alone.

Several sensitive fish species are found within this remarkable landscape, including Interior redband trout (*Oncorhynchus mykiss spp)*, Lahontan cutthroat trout (*Oncorhynchus clarkii henshawi*), and bull trout (*Salvelinus confluentus*). Bull trout and Lahontan cutthroat trout are listed as threatened species under the Endangered Species Act, and redband trout are designated as a species of concern by the U.S. Department of the Interior and the state of Oregon. According to the Bureau of Land Management, there are at least 15 native fish species that occur in this area (not to mention amphibians and aquatic invertebrates, many of which also have various state and federal special status designations). If chaff or flares are released over the Owyhee or its tributaries and other waters within the Oregon portion of the training project area, there is a high likelihood that concerning levels of pollutants will enter the waterways that support these sensitive fish and other species. The steep, narrow canyons that many of these streams flow through will likely act as a funnel for clouds of chaff and flares, magnifying the concentration of pollutants that will enter the water.

In 2022, ONDA asked the Air Force, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *as amended*, to provide copies "of any NPDES or related permit(s) authorizing any discharge of pollutants associated with military aircraft training activities by the Mountain Home Air Force Base." In response, the agency produced five documents, all of which were associated with on-base waste and storm water treatment activities. We also checked with DEQ, who indicated that they have no record of any NPDES permit for Mountain Home AFB activities occurring in Oregon. To our knowledge, the Mountain Home AFB does not have, and has never had, a required permit for discharge of pollutants into navigable waters in Oregon.

The Air Force confirmed as much when, in response to this public concern, the agency claimed (incorrectly) in the 2023 FEIS that "military aircraft are not point sources under the CWA and the National Pollutant Discharge Elimination System does not apply. There are currently no requirements under the CWA that apply to military aircraft operations." FEIS at B-188 (also selectively quoting the definition of a point source as "pipes or man-made ditches"). This is incorrect as a matter of law.

In sum, the Air Force is violating section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging chaff and similar materials to surface waters while conducting military training exercises from the Mountain Home AFB without an NPDES permit. These violations occur each and every day the Air Force releases chaff or similar materials during these military training exercises. ONDA provides notice that it intends to sue for such unlawful discharges in Oregon associated with training missions in or involving the Paradise North area. This area includes, among others, hundreds of miles in the Owyhee Wild and Scenic Rivers system and its tributary streams.

5

**EXHIBIT 1 - Page 5 of 14**

## PERSONS GIVING NOTICE

The name, address, and phone number of the person giving notice of intent to sue is:

Oregon Natural Desert Association
50 SW Bond St., Ste. 4
Bend, OR  97702
541-330-2638

Counsel for the party(ies) giving notice is:

Peter M. Lacy
Oregon Natural Desert Association
2009 NE Alberta Street, Suite 207
Portland, OR  97211
503-525-0193  |  lacy@onda.org

## CONCLUSION

It is ONDA's hope that this notice will make it unnecessary to pursue litigation concerning this issue. ONDA is prepared, however, to seek judicial intervention to address the department's failure to properly carry out its mandatory duties under the CWA. ONDA has a policy of pursuing negotiations whenever possible. This policy applies to all types of environmental disputes, including enforcement of the CWA. In keeping with this policy, we invite you to discuss with us your compliance with the CWA. Please direct any questions concerning this notice to Peter M. Lacy, lead counsel for the above party. We look forward to your response.

Sincerely,

s/ Peter M. Lacy

Peter M. ("Mac") Lacy, Senior Attorney
Oregon Natural Desert Association

2009 NE Alberta St., Ste. 207
Portland, OR  07211
lacy@onda.org

Cc:     Ryan Houston, Executive Director
        Oregon Natural Desert Association
        rhouston@onda.org

        Mark Salvo, Program Director
        Oregon Natural Desert Association
        msalvo@onda.org

6

**EXHIBIT 1 - Page 6 of 14**

## CERTIFICATE OF SERVICE

I, <u>Peter M. Lacy</u>, declare under penalty of perjury of the laws of the United States that I

am counsel for Oregon Natural Desert Association and that on August 16, 2023, I caused copies

of the foregoing Notice of Violations and Intent to Sue Under the Clean Water Act to be served

on the following by depositing them with the United States Postal Service, certified mail, return

receipt requested, postage prepaid:

Secretary Lloyd J. Austin III
U.S. Department of Defense
1400 Defense Pentagon
Washington, D.C.  20301-1400

Secretary Frank Kendall
U.S. Department of the Air Force
1690 Air Force Pentagon
Washington, D.C.  20330–1670

Colonel Ernesto M. DiVittorio
Wing Commander, 366th Fighter Wing
Mountain Home Air Force Base
1740 East Fairview Ave, PMB 20
Meridian, Idaho 83642

Attorney General Merrick B. Garland
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Administrator Michael S. Regan
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., N.W.
(Mail Code 1101A)
Washington, D.C. 20460

Regional Administrator Casey Sixkiller
U.S. Envtl. Protection Agency, Region 10
1200 Sixth Avenue, Suite 155
Seattle, WA 98101

Director Lea Feldon
Oregon Department of Environmental Quality
700 NE Multnomah Street, Suite 600
Portland, OR 97232-4100



_____

7

**EXHIBIT 1 - Page 7 of 14**



April 10, 2023

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Secretary Lloyd J. Austin III
U.S. Department of Defense
1400 Defense Pentagon
Washington, D.C.  20301-1400

Secretary Frank Kendall
U.S. Department of the Air Force
1690 Air Force Pentagon
Washington, D.C.  20330–1670

Colonel Ernesto M. DiVittorio
Wing Commander, 366th Fighter Wing
Mountain Home Air Force Base
1740 East Fairview Ave, PMB 20
Meridian, Idaho 83642

Re:    Notice of Violations and Intent to Sue under Clean Water Act,
       33 U.S.C. § 1251 *et seq.*

Dear Secretary Austin, Secretary Kendall, and Colonel DiVittorio:

      Through counsel, the Oregon Natural Desert Association ("ONDA") hereby notifies you of its intent to file suit against the U.S. Department of the Air Force and Secretary Frank Kendall in his official capacity as the Secretary of the U.S. Department of the Air Force (collectively, the "Air Force"), over the Mountain Home Air Force Base's ("AFB") ongoing violations of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. §§ 1251–1387. Through its ongoing military training exercises conducted from the Mountain Home AFB, the Air Force is violating section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants into the waters of the United States without a permit. At the expiration of 60 days from the date of this letter, ONDA intends to file suit under the CWA's citizen suit provision, 33 U.S.C. § 1365, and will seek declaratory and injunctive relief and all other relief authorized by law for these violations.

## LEGAL BACKGROUND

      The CWA is designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits "the discharge of any pollutant by any person" from a point source into navigable waters unless allowed by a National

**EXHIBIT 1 – Page 8 of 14**

Pollutant Discharge Elimination System ("NPDES") permit. *Id.* § 1311(a). *See Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000) (discharge of pollutants without permit, or in violation of permit, is illegal). NPDES permits are issued by the U.S. Environmental Protection Agency ("EPA") or by a state agency authorized by EPA to administer the NPDES program. *See* 33 U.S.C. § 1342(a)–(b); *Ass'n to Protect Hammersley, Eld, and Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1009 (9th Cir. 2002). The Oregon Department of Environmental Quality ("DEQ") is authorized to issue NPDES permits for discharges to waters in the state of Oregon.

The Act defines the term "discharge of any pollutant" as "any addition of any *pollutant* to the waters of the [United States] from any *point source* other than a vessel or other floating craft." 33 U.S.C. § 1362(12) (emphases added). Pollutant, in turn, means "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, *munitions*, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." *Id.* § 1362(6) (emphasis added). And a "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft from which pollutants are or may be discharged . . . ." *Id.* § 1362(14). CWA jurisdiction extends to "navigable waters," a phrase defined as "the waters of the United States." *Id.* § 1362(7). This includes tributaries to navigable waters. 40 C.F.R. § 120.2(1)(ii).

Ongoing violations of the CWA and NPDES permits are enforceable through the Act's citizen suit provision. 33 U.S.C. § 1365(a), (f). This provision requires citizens to send a notice letter to the EPA, the state in which the alleged violation occurs, and to the alleged violator, before bringing suit. *Id.* § 1365(b). As required by the CWA, this letter provides notice of the violations that have occurred and continue to occur as a result of the Mountain Home AFB's training exercises in southeastern Oregon. *See* 40 C.F.R. § 135.3(a).

## VIOLATIONS OF THE CLEAN WATER ACT

The Air Force is in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), because chaff and flares discharged from aircraft during training missions are being discharged into waters of the United States in the Mountain Home AFB's six Military Operations Areas, including the Owyhee North area which covers almost one million acres of land in southeastern Oregon. The Air Force states in its 2023 Final Environmental Impact Statement ("FEIS") for the Mountain Home AFB Optimization proposal that the department uses chaff and flares to interfere with Air Traffic Control and "enemy" RADAR. FEIS at 3-161 to -162.[1] "Chaff consists of reflective, aluminum-coated glass fibers" and is "stored in canisters that contain millions of fibers [that are] dispensed from aircraft when a missile attack is imminent." *Id.* at 3-161. The fibers create a "RADAR cloud" and then drop to the ground. *Id.*

---

[1] U.S. Dep't of the Air Force, *Final Environmental Impact Statement for Airspace Optimization for Readiness at Mountain Home Air Force Base, Idaho* (March 2023), https://www.mountainhomeafbairspaceeis.com/index.aspx.

**EXHIBIT 1 - Page 9 of 14**

The Air Force has acknowledged that "[c]haff fibers or residual matter from chaff and flares could collect on water surfaces." Draft EIS at 2-40.[2] The FEIS claims that chaff and flares "are not considered toxic" and "would not affect ground or water quality." FEIS at 2-39. The department asserts that the "probability of a substantial amount" of material being deposited "would be minuscule"—although the amount of chaff and flares permitted under the proposed action "would potentially increase over baseline amounts." *Id*. at 2-40.

The Air Force indicates that the use of chaff is "covered" annually by a "Chaff Clearance Letter" that provides guidance from the Air Force and the Federal Aviation Administration. FEIS at 3-161. Nowhere in the FEIS does the Air Force indicate that it has ever sought or secured a CWA permit from the EPA or DEQ; the annual "Chaff Clearance Letter" cannot serve as an NPDES permit. ONDA has reviewed the most recent such letter provided to us, dated January 6, 2022, and it contains no indication of or reference to a CWA permit.

The Supreme Court has confirmed that the U.S. Navy's "release of ordnance from aircraft or from ships into navigable waters is a discharge of pollutants" under the Act. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 309 (1982). Since that time, other courts have held that coal and coal dust blown off the top of moving rail cars and into navigable waters amounted to a point source discharge, *Sierra Club v. BNSF Ry. Co.*, No. 2:13-cv-00967-JCC, ECF 337 (W.D. Wash. Oct. 25, 2016), spraying of pesticides from aircraft is a discharge from a point source, *Peconic Baykeeper, Inc. v. Suffolk Cnty.*, 600 F.3d 180, 188–89 (2d Cir. 2010), spraying of pollutants from helicopters into the air, which eventually landed on navigable waters, was a discharge from a point source, *No Spray Coal., Inc. v. City of New York*, No. 00 Civ. 5395(GBD), 2005 WL 1354041, *5 (S.D.N.Y. June 8, 2005), and "aerial spraying of pesticide conducted by the Forest Service is point source pollution" and requires an NPDES permit. *League of Wilderness Defs./Blue Mtns. Biodiversity Proj. v. Forsgren*, 309 F.3d 1181, 1192–93 (9th Cir. 2002). The Air Force's release of chaff and flares into navigable waters throughout the Owyhee region fits easily into the courts' understanding of what constitutes a prohibited discharge of pollutants from a point source under the CWA.

Through public comments dated November 22, 2019, October 22, 2021, and April 3, 2023, ONDA raised this concern and informed the Air Force that the agency's ongoing and proposed Mountain Home AFB training activities were damaging fish and wildlife habitat and water resources and were in violation of the CWA. Among other concerns, ONDA pointed out that the Air Force itself has identified both aluminum and copper as elements within chaff that could cause detrimental effects to aquatic species—not to mention potential impacts to humans and other wildlife—stating that:

> sensitive aquatic species could be adversely affected by repeated, concentrated
> exposure to chaff deposition. If such an environment exists in an area proposed

---

[2] U.S. Dep't of the Air Force, *Draft Environmental Impact Statement for Airspace Optimization for Readiness at Mountain Home Air Force Base, Idaho* (July 2021), https://www.mountainhomeafbairspaceeis.com/index.aspx.

EXHIBIT 1 - Page 10 of 14

for chaff use, the presence of threatened or endangered aquatic species should be identified through consultation with the local office of the U.S. Fish and Wildlife Service and the state fish and game or fish and wildlife department. If protected aquatic species or their habitats are known to occur or could be in the area, the environmental assessment should include a quantification of the amount of copper that they might be exposed to and resulting concentrations that could be expected in the affected water bodies under the proposed action.

USAF (1997) at 163.[3] It is well established that copper, aluminum, and other metals can be toxic to bull trout, Lahontan cutthroat trout, redband and other native trout at very low levels. *See, e.g.*, Kiser *et al*. (2010) (bull trout and copper),[4] Bopp *et al*. (2008) (redband trout and copper),[5] Farag *et al*. (2011) (cutthroat trout and copper),[6] Woodward *et al*. (2011) (cutthroat trout and aluminum),[7] Book *et al*. (2019) (rainbow trout and silica).[8]

The Air Force also has observed that "[u]se of chaff over or immediately adjacent to highly sensitive areas such as Wilderness Areas, Wild and Scenic Rivers, National Parks and Monuments, and other pristine natural areas may be incompatible with the land use management objectives for those areas." USAF (1997) at 3. Yet, the Air Force failed in both its 2021 DEIS and 2023 FEIS for Mountain Home AFB to adequately analyze the known and potential effects of chaff and flares on sensitive aquatic species and highly sensitive areas that occur in and around the Owyhee Canyonlands—an area that encompasses hundreds of thousands of acres of wilderness lands and almost 200 miles of protected rivers as part of the Owyhee Wild and Scenic

---

[3] U.S. Air Force. 1997. Environmental Effects of Self-Protection Chaff and Flares. Headquarters Air Combat Command Langley Air Force Base, Virginia. *Available at* https://ntrl.ntis.gov/NTRL/dashboard/searchResults/titleDetail/PB98110620.xhtml.

[4] Kiser, T. *et al*. 2010. Impacts and Pathways of Mine Contaminants to Bull Trout (*Salvelinus confluentus*) in an Idaho Watershed. *Environmental Contamination and Toxicology* 59(2):301-11.

[5] Bopp, S.K. *et al*. 2008. Copper-induced oxidative stress in rainbow trout gill cells. *Aquatic Toxicology* 86(2): 197-204. https://doi.org/10.1016/j.aquatox.2007.10.014.

[6] Farag, A.M. 2011. Dietary Effects of Metals-Contaminated Invertebrates from the Coeur d'Alene River, Idaho, on Cutthroat Trout. *Transactions of the American Fisheries Society* 128(4): 578-592. https://doi.org/10.1577/1548-8659(1999)128<0578:DEOMCI>2.0.CO;2.

[7] Woodward, D.F. *et al*. 2011. Sensitivity of Endemic Snake River Cutthroat Trout to Acidity and Elevated Aluminum. *Transactions of the American Fisheries Society* 118(6): 630-643. https://doi.org/10.1577/1548-8659(1989)118<0630:SOESRC>2.3.CO;2.

[8] Book, F. *et al*. 2019. Ecotoxicity screening of seven different types of commercial silica nanoparticles using cellular and organismic assays: Importance of surface and size. *NanoImpact* 13: 100-111. https://doi.org/10.1016/j.impact.2019.01.001.

EXHIBIT 1 - Page 11 of 14

Rivers system. All told, there are 438 miles of streams and about 4,500 surface acres of flatwater fisheries habitat in the Bureau of Land Management's 4.6 million-acre Southeastern Oregon Resource Management Plan area (which covers Mountain Home AFB's Owyhee North training area) alone.

Several sensitive fish species are found within this remarkable landscape, including Interior redband trout (*Oncorhynchus mykiss spp*), Lahontan cutthroat trout (*Oncorhynchus clarkii henshawi*), and bull trout (*Salvelinus confluentus*). Bull trout and Lahontan cutthroat trout are listed as threatened species under the Endangered Species Act, and redband trout are designated as a species of concern by the U.S. Department of the Interior and the state of Oregon. According to the Bureau of Land Management, there are at least 15 native fish species that occur in this area (not to mention amphibians and aquatic invertebrates, many of which also have various state and federal special status designations). If chaff or flares are released over the Owyhee or its tributaries and other waters within the Oregon portion of the training project area, there is a high likelihood that concerning levels of pollutants will enter the waterways that support these sensitive fish and other species. The steep, narrow canyons that many of these streams flow through will likely act as a funnel for clouds of chaff and flares, magnifying the concentration of pollutants that will enter the water.

In 2022, ONDA asked the Air Force, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *as amended*, to provide copies "of any NPDES or related permit(s) authorizing any discharge of pollutants associated with military aircraft training activities by the Mountain Home Air Force Base." In response, the agency produced five documents, all of which were associated with on-base waste and storm water treatment activities. We also checked with DEQ, who indicated that they have no record of any NPDES permit for Mountain Home AFB activities occurring in Oregon. To our knowledge, the Mountain Home AFB does not have, and has never had, a required permit for discharge of pollutants into navigable waters in Oregon.

The Air Force confirmed as much when, in response to this public concern,  the agency claimed (incorrectly) in the 2023 FEIS that "military aircraft are not point sources under the CWA and the National Pollutant Discharge Elimination System does not apply. There are currently no requirements under the CWA that apply to military aircraft operations." FEIS at B-188 (also selectively quoting the definition of a point source as "pipes or man-made ditches"). This is incorrect as a matter of law.

In sum, the Air Force is violating section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging chaff and similar materials to surface waters while conducting military training exercises from the Mountain Home AFB without an NPDES permit. These violations occur each and every day the Air Force releases chaff or similar materials during these military training exercises. ONDA provides notice that it intends to sue for such unlawful discharges in Oregon associated with training missions in or involving the Owyhee North area. This area includes, among others, hundreds of miles in the Owyhee Wild and Scenic Rivers system and its tributary streams.

**EXHIBIT 1 - Page 12 of 14**

## PERSONS GIVING NOTICE

The name, address, and phone number of the person giving notice of intent to sue is:

Oregon Natural Desert Association
50 SW Bond St., Ste. 4
Bend, OR  97702
541-330-2638

Counsel for the party(ies) giving notice is:

Peter M. Lacy
Oregon Natural Desert Association
2009 NE Alberta Street, Suite 207
Portland, OR  97211
503-525-0193  |  lacy@onda.org

## CONCLUSION

It is ONDA's hope that this notice will make it unnecessary to pursue litigation concerning this issue. ONDA is prepared, however, to seek judicial intervention to address the department's failure to properly carry out its mandatory duties under the CWA. ONDA has a policy of pursuing negotiations whenever possible. This policy applies to all types of environmental disputes, including enforcement of the CWA. In keeping with this policy, we invite you to discuss with us your compliance with the CWA. Please direct any questions concerning this notice to Peter M. Lacy, lead counsel for the above party. We look forward to your response.

Sincerely,

s/ Peter M. Lacy

Peter M. ("Mac") Lacy, Senior Attorney
Oregon Natural Desert Association

2009 NE Alberta St., Ste. 207
Portland, OR  07211
lacy@onda.org

Cc:    Ryan Houston, Executive Director
       Oregon Natural Desert Association
       rhouston@onda.org

       Mark Salvo, Program Director
       Oregon Natural Desert Association
       msalvo@onda.org

6

**EXHIBIT 1 - Page 13 of 14**

## CERTIFICATE OF SERVICE

I, <u>Peter M. Lacy</u>, declare under penalty of perjury of the laws of the United States that I am counsel for Oregon Natural Desert Association and that on April 10, 2023, I caused copies of the foregoing Notice of Violations and Intent to Sue Under the Clean Water Act to be served on the following by depositing them with the United States Postal Service, certified mail, return receipt requested, postage prepaid:

Secretary Lloyd J. Austin III
U.S. Department of Defense
1400 Defense Pentagon
Washington, D.C.  20301-1400

Colonel Ernesto M. DiVittorio
Wing Commander, 366th Fighter Wing
Mountain Home Air Force Base
1740 East Fairview Ave, PMB 20
Meridian, Idaho 83642

Administrator Michael S. Regan
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., N.W.
(Mail Code 1101A)
Washington, D.C. 20460

Director Lea Feldon
Oregon Department of Environmental Quality
700 NE Multnomah Street, Suite 600
Portland, OR 97232-4100

Secretary Frank Kendall
U.S. Department of the Air Force
1690 Air Force Pentagon
Washington, D.C.  20330–1670

Attorney General Merrick B. Garland
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Regional Administrator Casey Sixkiller
U.S. Envtl. Protection Agency, Region 10
1200 Sixth Avenue, Suite 155
Seattle, WA 98101



_____

**EXHIBIT 1 - Page 14 of 14**