TODD KIM
Assistant Attorney General
DAVID KAPLAN
Environmental Defense Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 514-0997
david.kaplan@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PENDLETON DIVISION

| | | |
|---|---|---|
| OREGON NATURAL DESERT ASS'N, | ) | No. 2:23-cv-01898 |
| | ) | |
| Plaintiff, | ) | THE UNITED STATES' MOTION TO |
| | ) | DISMISS THE FIRST AMENDED |
| v. | ) | COMPLAINT FOR LACK OF |
| | ) | JURISDICTION (STANDING) AND |
| FRANK KENDALL III, in his official | ) | FOR FAILURE TO STATE A CLAIM |
| capacity as the Secretary of the U.S. | ) | FOR RELIEF, AND MEMORANDUM |
| Department of the Air Force, and U.S. | ) | IN SUPPORT |
| AIR FORCE, | ) | |
| | ) | |
| Defendants. | ) | |

## TABLE OF CONTENTS

MOTION TO DISMISS ...................................................................................................1

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ....................................1

INTRODUCTION AND SUMMARY ...........................................................................1

BACKGROUND ...........................................................................................................3

I.      The Clean Water Act ("CWA") ......................................................................... 3

        A.      Overview and Permit Requirements ........................................................3

        B.      CWA Enforcement and the Citizen Suit Provision..................................5

II.     Litigation Overview and Plaintiff's Original and Amended Complaints ...........5

ARGUMENT ................................................................................................................6

I.      The Court Lacks Jurisdiction Over Plaintiff's First Amended Complaint
        Because Plaintiff Has Not Established Article III Standing ................................6

        A.      In a Facial Challenge Under Federal Rule 12(b)(1), Plaintiff Bears the
                Burden to Demonstrate Standing for at Least One of its Members in a Well-
                Pleaded Complaint ...................................................................................6

        B.      Because Article III Standing Is Not Dispensed in Gross, Plaintiff Must
                Plead Facts that Establish Injury-in-Fact and Causation with Sufficient
                Particularity to Establish Standing at Each Location where it Alleges
                Illegal CWA
                Discharges.................................................................................................9

        C.      Because Plaintiff Has Failed to Allege Sufficient Facts that on Their Face
                Establish a Concrete and Particularized Article III Injury-in-Fact and
                Should Be Dismissed for Lack of Jurisdiction .....................................10

        D.      Plaintiff's Reliance on *Alaska Center for the Environment* is Misplaced ............16

        E.      Plaintiff Has Not Satisfied its Burden to Establish Organizational Standing........19

II.     The First Amended Complaint's Conclusory and Nonspecific Pleading
        Fails to State a Claim for Relief and Thus Should Be Dismissed ....................22

CONCLUSION...........................................................................................................24

### TABLE OF AUTHORITIES

**CASES**

*Alaska Ctr. for the Env't v. Browner*,
  20 F.3d 981 (9th Cir. 1994) ........................................................................11, 16, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................8, 15, 22, 23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2009)...............................................................................................22, 23

*Bova v. City of Medford*,
  564 F.3d 1093 (9th Cir. 2009) ..................................................................................8

*Center for Biological Diversity v. U.S. Dep't of the Interior*,
  22-cv-01716 (TSC), 2023 WL 7182041 (D.D.C. Nov. 1, 2023)...............................18

*Chandler v. State Farm Mut. Auto. Ins. Co*.,
  598 F.3d 1115 (9th Cir. 2010).................................................................................6, 7

*Comm. to Save Mokelumne River v. E. Bay Mun. Util. Dist.*,
  13 F.3d 305 (9th Cir. 1993) ..................................................................................22, 23

*County of Maui, Hawaii v. Hawaii Wildlife Fund*,
  590 U.S. 165 (2020)...................................................................................................4

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006).........................................................................................7, 10, 17

*Dana v. Tewalt*,
  No. 1:18-cv-00298-DCN, 2022 WL 3598311 (D. Idaho Aug. 23, 2022),
  *aff'd in part, rev'd in part and remanded sub nom. Dana v. Idaho Dep't of Corr.*,
  No. 23-35047, 2024 WL 2862581 (9th Cir. June 6, 2024)......................................23

*David v. Alphin*,
  704 F.3d 327 (4th Cir. 2013) .....................................................................................8

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008)....................................................................................................7

*Friends of the Earth v. Gaston Copper Recycling Corp.*,
  204 F.3d 149 (4th Cir. 2000) ..................................................................................9, 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc,*,
   528 U.S. 167 (2000) ....................................................................................................10

*Friends of the Earth v. Sanderson Farms, Inc.,*
   992 F.3d 939 (9th Cir. 2021) .....................................................................................20

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.,*
   484 U.S. 49 (1987) ......................................................................................................5

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982) ..............................................................................................19, 20

*Idaho Conservation League v. Poe,*
   86 F.4th 1243 (9th Cir. 2023),
   *cert. denied*, 144 S. Ct. 2717 (2024) .........................................................................17

*Jones v. L.A. Cent. Plaza LLC,*
   74 F.4th 1053 (9th Cir. 2023) ..............................................................................8, 9, 15

*Kingman Reef Atoll Invs., LLC v. United States,*
   541 F.3d 1189 (9th Cir. 2008) .....................................................................................7

*Kokkonen v. Guardian Life Ins. Co.,*
   511 U.S. 375 (1994) .....................................................................................................7

*La Asociacion de Trabajadores de Lake Forest v. Lake Forest,*
   624 F.3d 1083 (9th Cir. 2010) ...................................................................................20

*Levine v. Vilsack,*
   587 F.3d 986 (9th Cir. 2009) .......................................................................................7

*Lewis v. Casey,*
   518 U.S. 343 (1996) ..............................................................................................10, 17

*Lujan v. Defs. Of Wildlife,*
   504 U.S. 555 (1992) .........................................................7, 8, 10, 13, 14, 15, 17, 21

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) ................................................................................................9, 18

*Maya v. Centex Corp.,*
   658 F.3d 1060 (9th Cir. 2011) .....................................................................................9

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*
   453 U.S. 1 (1981) ......................................................................................................3, 4

*Mujica v. AirScan Inc.*,
   771 F.3d 580 (9th Cir. 2014) ...............................................................23, 24

*Sackett v. Env't Prot. Agency*,
   598 U.S. 651 (2023) ..............................................................................4

*Sierra Club v. Morton*,
   405 U.S. 727 (1972) ..............................................................................9

*Simon v. Eastern Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ..............................................................................21

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...............................................7, 8, 9, 13, 15, 21

*Stock West, Inc. v. Confederated Tribes*,
   873 F.2d 1221 (9th Cir. 1989) ..............................................................7

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ...............................................................9, 10, 17

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*,
   594 F.2d 730 (9th Cir. 1979) ..............................................................7

*Tosco Corp. v. Comt'ys for a Better Env't*,
   236 F.3d 495 (9th Cir. 2001) ...........................................................15, 16

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ...........................................................................18, 19

*United States v. AVX Corp.*,
   962 F.2d 108 (1st Cir. 1992) ..............................................................16

*United States v. Riverside Bayview Homes, Inc.*,
   474 U.S. 121 (1985) ..............................................................................4

*Warth v. Seldin*,
   422 U.S. 490 (1975) ..............................................................................8

*Wash. Envtl. Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) ..............................................................9

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ..............................................................7

*Winsor v. Sequoia Benefits & Ins. Servs., LLC,*
  62 F.4th 517 (9th Cir. 2023) ...............................................................................15

*Wolfe v. City of Portland*,
  566 F. Supp. 3d 1069 (D. Or. 2021) ......................................................................6

**STATUTES**

33 U.S.C. § 1311(a) .............................................................................................3, 5

33 U.S.C. § 1319(b) .................................................................................................5

33 U.S.C. § 1319(d) .................................................................................................5

33 U.S.C. § 1342(b) .................................................................................................4

33 U.S.C. § 1362(7) .................................................................................................4

33 U.S.C. § 1362(12)(A) ..........................................................................................4

33 U.S.C. § 1362(14) ...............................................................................................4

33 U.S.C. § 1365(a)(1) .............................................................................................5

33 U.S.C. § 1365(f) ..................................................................................................5

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 8(a)(2).....................................................................................8, 15, 22

Fed. R. Civ. P. 12(b)(1)....................................................................................1, 6, 15

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 3, 15, 23

**LOCAL RULES**

Local Rule 7-1(a)(1)(A)..............................................................................................1

**DICTIONARY**

Black's Law Dictionary 479 (9th Ed. 2009)...............................................................8

Random House Dictionary of the English Language 305 (1967)................................8

## MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Frank Kendall III, in his official capacity as the Secretary of the U.S. Department of the Air Force, and the United States Air Force (collectively the "Air Force") move to dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction, because on its face that Complaint does not establish Article III standing and because it fails to state a claim for which relief may be granted. In compliance with Local Rule 7-1(a)(1)(A), the parties made a good faith effort by telephone conference to resolve the dispute and have been unable to do so.

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION AND SUMMARY

The Air Force, in its prior motion to dismiss, explained that Plaintiff's original Complaint failed, on its face, to satisfy Article III standing requirements. That Complaint sought to establish standing based upon alleged Clean Water Act ("CWA") violations by the Air Force arising from its use of countermeasures during jet fighter training over an immense geographical range, spanning nearly one million acres. But Plaintiff failed to adequately plead an injury-in-fact for the alleged violations the original Complaint purported to cover. For example, the Complaint failed to plead, for even one location let alone the entire expanse the Complaint covers, that at least one of Plaintiff's members suffered an Article III injury to a protected interest due to an alleged discharge at any specific location within the vast Paradise Ridge area that the Air Force uses for its training. Plaintiff's fundamental error was that, instead of pleading facts that sufficiently allege specific locations where illegal discharges occurred and of establishing a concrete and particularized injury-in-fact to a member's protected interest, the Complaint referenced all Plaintiff's members and their interests in the collective; it referenced hundreds of

miles of numerous different streams over an enormous geographic range, all in the collective; and it alleged harm and illegal discharges at unspecified locations throughout this enormous expanse, again all in the collective. In view of this, the Court at oral argument suggested that Plaintiff consider amending its Complaint to address the Court's concerns. Plaintiff elected to amend after notifying the Court that it would file a motion to amend its complaint, either unopposed or opposed. Plaintiff's Email to Ms. St. Germain (dated July 10, 2024). Rather than dispute whether Plaintiff should be permitted to amend its Complaint at that time, the Air Force stipulated that Plaintiff could amend and reserved its right to move to dismiss. Doc. No. 17 (Stipulation); Doc. No. 19 (Order).

In its First Amended Complaint, Plaintiff doubles down on the legally deficient strategy it pursued in its original Complaint, seeking to establish standing in gross, based on collective, *en masse* allegations. While Plaintiff has added some detail about where some of its individual members recreate, Doc. No. 18 ¶¶ 15-19, and about the number of discrete streams in the Paradise North training area, *id.* ¶¶ 12 & 25-41 & Ex. 2 (alleging 604 discrete named and unnamed streams exist in the Paradise North training area), it has again failed to plead any facts that allege discharges and their locations in a specific stream (let alone in all, or a representative number of, streams) and that set out (a) the basis for concluding that illegal discharges occurred in a particular location, (b) when they occurred, or (c) the particular pollutants that were discharged at each location. By failing to allege such facts, Plaintiff has not established, and cannot establish, a concrete and particularized injury-in-fact to one or more of its members from a specific discharge at one location, let alone for alleged discharges in all the distinct waterbodies throughout the nearly one million-acre Paradise North training area the Amended Complaint purports to cover. Nor does the Amended Complaint establish that such unidentified discharges

caused such injury-in-fact. Accordingly, the First Amended Complaint should be dismissed.

Plaintiff cannot defer its obligation to satisfy these bedrock Article III requirements until some later phase in the litigation, on the hope that it may later gather the necessary facts. Article III-compliant pleading is a constitutional prerequisite to subject matter jurisdiction. Moreover, compliance with Article III restrictions is not a mere paper exercise. Such compliance may well require that a plaintiff restructure the scope of its complaint, by limiting it to violations that the plaintiff can identify with adequate specificity to establish a particularized injury-in-fact and causation, if it can do so at all. That nexus is critical where, as here, the plaintiff seeks to litigate purported violations over an immense geographic area. As it stands now, Plaintiff's inability to plead facts necessary to establish Article III standing suggests that no such actual discharges exist or that Plaintiff's members have not suffered a concrete and particularized harm caused by any such illegal discharges at a particular location.

Even if the Court finds that Plaintiff has met its burden to establish Article III standing at this juncture, the First Amended Complaint should be dismissed pursuant to Federal Rule 12(b)(6) because it fails to state a claim for which relief may be granted. Plaintiff's wholly conclusory assertions fail to plead facts sufficient to identify the location where any one alleged illegal discharge occurred, let alone for all discharges the First Amended Complaint purports to cover, and are not adequate to state a claim. Thus, the Court should dismiss this case.

## BACKGROUND

### I.    The Clean Water Act ("CWA")

#### A.    Overview and Permit Requirements

The CWA prohibits "the discharge of any pollutant by any person," 33 U.S.C. § 1311(a), unless the discharger "obtain[s] a permit and compl[ies] with its terms." *Middlesex Cnty.*

*Sewerage Auth.* v. *Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 11 (1981) (citation omitted). A "discharge of a pollutant" occurs when a person adds "any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A). A point source is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, . . . or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). "[N]avigable waters" are "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). Waters of the United States generally include rivers and their tributaries, certain lakes, streams, and wetlands and other waters where the waterbody in question satisfies the criteria for regulation under the CWA. *See United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121 (1985); *e.g., Sackett v. Env'tl Prot. Agency,* 598 U.S. 651 (2023) (wetlands). Not every pollutant released from a point source that ultimately reaches waters of the United States requires a CWA permit, *see, e.g., County of Maui, Hawaii v. Hawaii Wildlife Fund*, 590 U.S. 165 (2020) (considering multiple factors before concluding that certain releases into groundwater that ultimately reach waters of the United States require a CWA permit).

The Environmental Protection Agency ("EPA") administers the National Pollutant Discharge Elimination System permitting program under Section 1342 of the CWA (often referred to as "NPDES" permits). NPDES permits may be issued by EPA or by a state that is authorized to operate a state program in lieu of the federal NPDES program. 33 U.S.C. § 1342(b). Oregon has an approved state program, and thus the Oregon Department of Environmental Quality issues permits for pollutant discharges from point sources into waters of the United States within Oregon.

B.        **CWA Enforcement and the Citizen Suit Provision**

The CWA broadly authorizes the United States to enforce violations of the CWA in district court to obtain injunctive and other relief if a party discharges pollutants from a point source into waters of the United States without a required NPDES permit, or if a party violates the terms of such a permit. *See* 33 U.S.C. § 1319(b), (d). Citizens are authorized to file suit to enforce against a more narrow and circumscribed range of CWA violations. As relevant here, subsection (a)(1) of the citizen suit provision authorizes suits "against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1). An "effluent standard or limitation" is defined to include "an unlawful act under subsection (a) of section 1311," *id.* § 1365(f), which includes a discharge into waters of the United States without the required CWA permit, *id.* § 1311(a). The Supreme Court has held that past CWA violations are actionable under the citizen suit provision, provided that those past violations are also "ongoing." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*, 484 U.S. 49, 56-57, 59 (1987).

II.       **Litigation Overview and Plaintiff's Original and Amended Complaints**

Military aircraft have been training over southwest Idaho since Mountain Home Army Air Field opened on August 7, 1942. Currently, the Air Force conducts aerial jet fighter training for aircraft (primarily F-15E Strike Eagle aircraft) and pilots stationed at Mountain Home Air Force Base. This aerial flight training takes place within six Military Operation Areas, including the Paradise North desert lands in southeastern Oregon, as part of the Air Force's ongoing mission to train and equip our nation's elite cadre of fighter pilots. The training occurs over an expansive area and may at times include fighter jets releasing chaff and flares into the

atmosphere as practice for defending against RADAR-guided weapons and against heat-seeking missiles, respectively. The Air Force has at times used chaff and flares during aerial training at Mountain Home Air Force Base for several decades.

In a separate lawsuit pending in this Court, the Plaintiff here and two additional organizations have challenged, under the Administrative Procedure Act and National Environmental Policy Act, the Air Force's decision to allow future training flights within the Paradise North training area to occur at lower operational altitudes, or "floors," of 100 feet for subsonic flights and 10,000 feet for supersonic flights. *Oregon Natural Desert Ass'n. v. U.S. Dep't of the Air Force*, Case No. 2:24-cv-00145-HL (D. Or.). Training flights at these lower floors will not commence until, among other things, the Federal Aviation Administration charts the airspace to reflect the change in operating floors.

The key terms of Plaintiff's original Complaint are detailed in our prior motion to dismiss. Doc. No. 8. The changes made in Plaintiff's First Amended Complaint relevant to this motion are described and discussed in the Argument section below.

## ARGUMENT

### I.   The Court Lacks Jurisdiction Over Plaintiff's First Amended Complaint Because Plaintiff Has Not Established Article III Standing.

#### A.   In a Facial Challenge Under Federal Rule 12(b)(1), Plaintiff Bears the Burden to Demonstrate Standing for at Least One of its Members in a Well-Pleaded Complaint.

"A plaintiff's standing under Article III of the United States Constitution is a component of subject matter jurisdiction properly challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Wolfe v. City of Portland*, 566 F. Supp. 3d 1069, 1078 (D. Or. 2021) (citing

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). In response to a Rule 12(b)(1) motion, it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Chandler*, 598 F.3d at 1122; *see also Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008). Article III standing is fundamental to subject matter jurisdiction, so a court must dismiss an action if it determines at any time that the plaintiff lacks standing. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992).

A party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"); *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979) (facial attack). Whatever the nature of the challenge, plaintiff bears the burden of demonstrating that the court has subject matter jurisdiction to hear the action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). To satisfy its burden to establish standing, the plaintiff "'must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought." *Davis v. Fed. Election Comm'n,* 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

A plaintiff seeking relief must establish the three elements that constitute the "irreducible constitutional minimum" of Article III standing. *Lujan v. Defs. Of Wildlife*, 504 U.S. at 560. Specifically, the plaintiff has the burden of showing: "(1) that plaintiff[ ] . . . suffered an injury in fact that was concrete and particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged conduct; and (3) that the injury was likely to be redressed by a favorable court decision." *Levine v. Vilsack*, 587 F.3d 986, 991-92 (9th Cir. 2009). The injury

cannot be "'conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)

(quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. at 560); *accord Bova v. City of Medford*, 564 F.3d

1093, 1096 (9th Cir. 2009). An injury is "particularized" if it "affect[s] the plaintiff in a personal

and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. at

560 n.1). An injury is "concrete" if it is "'de facto'; that is, it must actually exist," *id.* at 340,

meaning that it is "'real' and not 'abstract.'" *Id*. (quoting Webster's Third New International

Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967)).

 Each of these elements "must be supported in the same way as any other matter on which

the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at

the successive stages of the litigation." *Lujan v. Defs. Of Wildlife*, 504 U.S. at 561. "It is the

responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to

invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth

v. Seldin*, 422 U.S. 490, 518 (1975). Thus, "at the pleading stage, the plaintiff must clearly . . .

allege facts demonstrating each element" required for Article III standing. *Spokeo*, 578 U.S. at

338 (internal quotations omitted). Although courts hearing a facial challenge generally accept as

true well-pleaded factual allegations in the complaint, standing cannot rest on mere "legal

conclusions" or "naked assertions." *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013). Rather,

under Federal Rule 8(a)(2), which applies to motions to dismiss for lack of jurisdiction, *see infra*

at 15, a complaint that contains "'naked assertion[s]' devoid of 'further factual enhancement'"

should be dismissed, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted), and

conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679-80. Thus, "at the

pleading stage, the plaintiff must allege sufficient facts that, taken as true, 'demonstrat[e] each

element' of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir.

2023) (brackets in original) (quoting *Spokeo*, 578 U.S. at 338). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (A plaintiff cannot "rely on a bare legal conclusion to assert injury-in-fact, or engage in an ingenious academic exercise in the conceivable to explain how defendants' actions caused his injury.") (internal quotation marks omitted).

For an organizational plaintiff such as the Oregon Natural Desert Association to have standing, it must demonstrate on the face of its complaint through specific alleged facts that at least one of its "members would otherwise have standing to sue in [the member's] own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013). It is thus black-letter law that organizational plaintiffs only have standing to bring a claim where there is a specific threat to at least one of their identified member's interests: no plaintiff has standing "apart from [a] concrete application that threatens imminent harm to his interests." *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009); *see also Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972).

**B.    Because Article III Standing Is Not Dispensed in Gross, Plaintiff Must Plead Facts that Establish Injury-in-Fact and Causation with Sufficient Particularity to Establish Standing at Each Location where it Alleges Illegal CWA Discharges.**

The standing requirements discussed above apply forcefully in environmental cases, because a "generalized harm to . . . the environment will not alone support standing." *Summers*, 555 U.S. at 494; *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (holding that requirements of standing are not met when plaintiff alleges harm in an "immense tract of territory"). In this regard, courts have rejected the theory that an environmental organization may act as "a roving environmental ombudsman seeking to right environmental wrongs wherever [it] might find them." *Friends of the Earth v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 157

(4th Cir. 2000). Rather, an environmental plaintiff has no standing to sue "apart from any concrete application that threatens imminent harm to [its] interests." *Summers*, 555 U.S. at 494; *accord Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc,*, 528 U.S. 167, 181 (2000) ("The relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff.").

This aspect of Article III standing is important in environmental cases because "standing is not dispensed in gross*," Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), and a cognizable interest by a person at one location will not establish standing in another absent the required showing at that location, *see Summers*, 555 U.S. at 494-96. Thus, even if a plaintiff chooses to bundle together multiple alleged violations at different locations into one claim or complaint, it still must satisfy standing requirements at each of those locations. And it is not enough for a plaintiff to allege that an interest injured at one location establishes standing at some other location merely because they are part of the same ecosystem. *Lujan v. Defs. Of Wildlife*, 504 U.S. at 565; *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. at 352. Rather, to establish injury, a plaintiff "must use the area affected by the challenged activity and not an area roughly 'in the vicinity' of it." *Lujan v. Defs. Of Wildlife* , 504 U.S. at 566.

### C.    Because Plaintiff Has Failed to Allege Sufficient Facts that on Their Face Establish a Concrete and Particularized Article III Injury-in-Fact and Causation, this Case Should Be Dismissed for Lack of Jurisdiction.

On its face, the Amended Complaint fails to allege facts sufficient to establish a concrete and particularized injury-in-fact for any one of Plaintiff's members, or to establish causation for such an injury, with regard to even one location where Plaintiff alleges an illegal discharge has occurred, let alone for the illegal discharges Plaintiff asserts have occurred in every waterbody throughout the nearly one million-acre expanse the Amended Complaint purports to cover.

Plaintiff has chosen to bundle together numerous alleged illegal discharges in numerous discrete waterbodies throughout an enormous geographic area. Thus, Plaintiff appears again to rely on the theory that, so long as it pleads sufficient facts to establish standing to pursue a representative number of alleged illegal discharges in a representative number of waterbodies, then that is sufficient to satisfy standing requirements for alleged illegal discharges in every waterbody within this nearly one million-acre area. In Section D below, we explain why Plaintiff's representative theory of standing is inconsistent with Article III and Supreme Court precedent holding that "standing is not dispensed in gross." *Lewis*, 518 U.S. at 358 n.6. We also explain why the Ninth Circuit's decision in *Alaska Center for the Environment v. Browner*, 20 F.3d 981 (9th Cir. 1994), is inapplicable here.

The Court, however, need not reach this legal issue in the first instance because, even assuming Plaintiff's theory were legally cognizable, Plaintiff has not even pled facts sufficient to establish a concrete and particularized injury-in-fact, or causation for such an injury, with regard to even one, let alone a representative number, of discharges to specific waters. Rather, in its Amended Complaint, Plaintiff has doubled down on its use of generalized, collective pleading on an essential component of standing. Specifically, it has failed to allege sufficient facts addressing the particular locations, timeframes, and type of discharges, which is necessary to show that one or more of its members suffered a concrete and particularized injury-in-fact and how any such alleged discharge has caused that injury.

The changes in the Amended Complaint highlight the patent defects in Plaintiff's pleading. As relevant here, the Amended Complaint includes two types of substantive changes. First, Plaintiff added a map, Doc. No. 18 at p.6, that allegedly "identifies most or all of the waterbodies in the Paradise North Area," *id.* 12, and attached an exhibit that lists "[m]ost or all

of these waterbodies . . . ," *id*. That exhibit lists 604 discrete streams, named and unnamed, and alleges the length of each of those streams in the Paradise North training area. *Id.* Ex. 2. Notably, the map does not identify where any of the 604 discrete named and unnamed streams listed in Exhibit 2 are located. Paragraphs 35-40 of the Amended Complaint provide some limited description of a small sampling of these 604 distinct streams. Second, the First Amended Complaint sets out in Paragraphs 15 to 19 some examples of Plaintiff's individual members who over some period of years have once or more recreated in locations within a small sampling of the 604 named or unnamed streams in the Paradise North area.

However, when it comes to alleging a factual basis for identifying where any of the alleged illegal discharges Plaintiff seeks to pursue in this lawsuit actually occurred, or approximately when such alleged discharges occurred, or even what was discharged at any particular location, the Amended Complaint is silent. Instead, it attempts to bridge this factual gap with a single sentence in Paragraph 12 that alleges: "On information and belief, the Air Force discharges pollution from aircraft into waterbodies, named and unnamed, throughout the Paradise North Military Operations Area and/or the discharges adversely impact all waterbodies, named and unnamed, throughout the Paradise North Military Operations Area."

Plaintiff's deficient pleading fails to establish standing at any one location, let alone at all locations the Amended Complaint purports to cover, in three fundamental ways, each of which is dispositive. First, Plaintiff's statement that the Air Force has discharged pollutants into every stream (all alleged 604 streams) within the nearly one million-acre Paradise North training area is wholly conclusory, and represents nothing more than a rote, unsupported, and fact-free recounting of one statutory element of a CWA violation; namely, that a violation must involve a point source discharge. *See supra* at 4; *infra* at 23. For example, Plaintiff makes no allegation that

any individual member observed or detected and documented any discharges of any pollutants into any one stream, let alone in all streams. As discussed further below (*infra* at 13-16), the Court should not accept such conclusory pleading as true, even at the pleading stage. Plaintiff's conclusory assertion resembles nothing more than its unsupported working hypothesis or legal conclusion, rather than the kind of factual allegations courts credit as true when ruling on a motion to dismiss. In this regard, Plaintiff's pleading on this key element is substantively no different from the collective, *en masse* pleading in its original Complaint; specifically, where the original Complaint alleged in wholly conclusory terms that illegal discharges occurred in hundreds of miles of streams throughout the nearly one million-acre Paradise North training area, *see* Doc. No. 1 ¶¶ 26, 31, 40, Plaintiff's Amended Complaint purports to list every stream in the Paradise North area (without even identifying where those streams are located), and then again alleges in wholly conclusory terms that illegal discharges have occurred in every such stream.

Second, facts alleged at the pleading stage must, if accepted as true, establish an injury-in-fact that is "concreate and particularized," *Spokeo,* 578 U.S. at 339. And such an injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way," *id.* at 339 (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. at 560 n.1), and is "concrete" if it is "'de facto'; that is, it must actually exist," meaning that it is "'real' and not 'abstract,'" *id*. at 340 (citation omitted). Having failed to plead sufficient facts pertaining to the particular location where alleged discharges occurred in any particular stream (let alone all streams), approximately when they occurred, and what pollutant was discharged at each location, Plaintiff has not met its burden to establish a concrete and particularized injury at any one location, let alone at all locations the Amended Complaint purports to cover. Moreover, because Plaintiff has not plead sufficient facts regarding alleged discharges at any one location, it also cannot meet its burden to establish that a

concrete and particularized injury to any one of its members was caused by discharges at any such location.

Third, Plaintiff's assertions in Paragraph 12 are hopelessly convoluted because they assert either that illegal discharges "and/or" adverse impacts have occurred in all waterbodies throughout the Paradise North area. By this use of the conjunctive or disjunctive, Plaintiff not only pleads in wholly conclusory and *en masse* terms, but also fails to indicate what kind of conclusory *en masse* assertions (i.e., discharges or impacts) apply to any or all of streams and locations. Nor do any of Plaintiff's allegations about where its members have recreated remedy this lack of specificity. Rather, those allegations similarly fail to plead facts sufficient to identify a specific stream and location where illegal discharges have occurred.

Plaintiff will likely rely, as it did when opposing our prior motion to dismiss, upon *Lujan v. Defenders of Wildlife*, 504 U.S. at 561, claiming that decision allows this Court to simply assume the presence of any necessary factual allegations at the pleading stage. But such an argument would mischaracterize that decision and ignore more recent, clarifying case law. In *Lujan v. Defenders of Wildlife* the Supreme Court explained that "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." 504 U.S. at 561 (internal quotations omitted). This proposition, however, which provides only that "general factual allegations of injury . . . may" suffice, does not allow a plaintiff to avoid pleading facts that are essential to establish each element of standing, such as identifying the location of the allegedly illegal discharges and tracing such discharges to an individual's alleged harm. Moreover, these bedrock Article III requirements are particularly important where, as here, an organizational plaintiff relies upon associational standing, and thus must plead with

sufficiently particularized and concrete facts that at least one member in their own right has standing.

Since *Lujan v. Defenders of Wildlife,* the Supreme Court and Ninth Circuit have clarified that a pleading must allege the essential, particularized facts necessary to survive a motion to dismiss for lack of jurisdiction. As explained above, the Supreme Court's 2016 decision in *Spokeo* clarified that, "at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element" necessary to establish Article III standing. 578 U.S. at 338 (quoting *Defenders of Wildlife*, 504 U.S. at 560 n.1). Before that, in *Ashcroft v. Iqbal*, 556 U.S. at 678–79, the Supreme Court explained that, under the pleading requirements of Federal Rule 8(a)(2), a complaint that contains "'naked assertion[s]' devoid of 'further factual enhancement'" should be dismissed, *id.* at 678 (citation omitted), and that conclusory allegations "are not entitled to the assumption of truth" when considering a motion to dismiss under Federal Rule 12(b)(6).

In a recent decision, the Ninth Circuit explained that, "at the pleading stage, the plaintiff must allege sufficient facts that, taken as true, 'demonstrat[e] each element' of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th at 1057 (brackets in original) (quoting *Spokeo,* 578 U.S. at 338). In *Jones* the court further observed that circuit precedent holding that *Iqbal* does not apply in the Rule 12(b)(1) context is no longer viable after *Spokeo.* 74 F.4th at 1056 n.1. Thus, the pleading requirements of *Spokeo* and *Iqbal* apply to facial challenges to standing. *Id.; see Winsor v. Sequoia Benefits & Ins. Servs., LLC,* 62 F.4th 517, 523-25 (9th Cir. 2023) (applying *Iqbal* pleading standards in a Rule 12(b)(1) facial challenge to Article III standing).

In sum, to survive a 12(b)(1) motion to dismiss, "[a] plaintiff [] must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal

jurisdiction"—otherwise, the court must dismiss the case. *Tosco Corp. v. Comt'ys for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001); *see United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992) ("where standing is at issue, heightened specificity is obligatory at the pleading stage. . . . The complainant must set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing."). As explained above, Plaintiff's First Amended Complaint fails to satisfy these requirements, and thus the Court should dismiss the case for lack of jurisdiction.

### D.    Plaintiff's Reliance on *Alaska Center for the Environment* is Misplaced.

Plaintiff will likely rely again on *Alaska Center for the Environment v. Browner*, 20 F.3d 981 (9th Cir. 1994), for the notion that the Court may treat all waterbodies within the nearly one million-acre expanse covered by Plaintiff's First Amended Complaint as one for standing purposes and thus that Plaintiff need only establish in its pleadings a concrete and particularized injury in fact and causation for only a representative number of waterbodies to establish Article III standing.

There are several fatal flaws with this argument. First, as explained above, Plaintiff has not in its pleadings established standing at any location for any one stream, let alone for a representative number of streams, and so Plaintiff has not satisfied this legal theory, even if it were potentially applicable, which, as we explain immediately below, it is not.

Second, in *Alaska Center*, the court found standing for purposes of the remedy phase of that case, after the court concluded that EPA had failed to fulfill its alleged state-wide regulatory duty to establish certain pollution standards. It was only in that narrow regulatory context, where the statute imposed a state-wide duty, that the court in *Alaska Center* concluded that "for CWA regulatory purposes, all waters within a state are interrelated." 20 F.3d at 985. That context is

fundamentally different from the situation here, where the Amended Complaint alleges *liability* for numerous individual violations in 604 distinct waterbodies all in different locations. Plaintiff cannot simply choose an area in which to bundle alleged illegal discharges into one claim, and then on the basis of that strategic choice gain standing throughout the entire area by establishing standing for only a representative number of discrete streams. Put another way, the key regulatory element that the court relied upon in *Alaska Center* – a state-wide regulatory duty imposed on EPA by the CWA – is absent in this case. Plaintiff cannot evade that important difference here by bundling together its allegations regarding different streams.

Third, and perhaps even more fundamentally, it is impossible to apply the theory in *Alaska Center* to the case here without running directly into Supreme Court decisions holding in environmental cases that "standing is not dispensed in gross," *Lewis v. Casey*, 518 U.S. at 358 n.6, and that a cognizable interest by a person at one location does not establish standing in another absent the required showing at that location, *see Summers*, 555 U.S. at 494-96. Nor can an interest and injury at one location establish standing at some other location simply because they may be part of the same ecosystem. *Lujan v. Defenders of Wildlife*, 504 U.S. at 565; *see also DaimlerChrysler Corp.*, 547 U.S. at 352.

It is worth noting that CWA citizen enforcement actions typically involve alleged illegal discharges into a particular waterbody at a particular identified location. *See, e.g., Idaho Conservation League v. Poe*, 86 F.4th 1243 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 2717 (2024). In that context, the citizen suit complaint must plead sufficient facts regarding those alleged illegal discharges, such as their particular location, timing, and the pollutants involved, to establish that those discharges caused a concrete and particularized injury-in-fact. Here, Plaintiff must live with its decision to bundle its alleged illegal discharges to 604 distinct streams over an

expanse larger than Rhode Island, all without providing any of the necessary factual assertions. Plaintiff's choice to bring such a lawsuit, however, provides no basis to eliminate pleading requirements necessary to establish Article III standing. If Plaintiff contends that illegal discharges have occurred at a particular location in a particular waterbody that cause a concrete and particularized injury-in-fact to a member who has a protected interest, and Plaintiff has actual, credible information upon which to base those assertions, Plaintiff should plead the facts to support that limited claim. *Cf. Lujan v. National Wildlife Fed'n*, 497 U.S. at 894 ("The case-by-case approach that this requires is understandably frustrating to an organization such as respondent. . . . But this is the traditional, and remains the normal, mode of operation of the courts.").

Consistent with these requirements, courts properly dismiss complaints that fail to establish standing, especially where (as here) standing is asserted for numerous alleged violations over a large geographical expanse. For example, in *Center for Biological Diversity v. U.S. Department of the Interior*, 22-cv-01716 (TSC), 2023 WL 7182041 (D.D.C. Nov. 1, 2023), an organization sought to challenge thousands of approvals to drill for oil and gas within a large geographic area. The court dismissed the case for lack of standing, explaining that the plaintiff had incorrectly asserted "that the law allows them to 'plot thousands of separate [approval] actions on a map,' 'draw a line around them,' and allege that they have individual members who have a geographic nexus with 'the resulting [approval] Area.'" *Id.* at *3 (citation omitted). The court rejected that approach as a matter of law, on the ground that allowing plaintiffs "to aggregate agency actions and assert a geographic nexus with the general areas those actions affect would jeopardize" fundamental Article III principles and conflict with the Supreme Court's admonition that "'standing is not dispensed in gross.'" *Id.*  (quoting *TransUnion LLC v.*

*Ramirez,* 594 U.S. 413, 431 (2021). The court thus concluded that the plaintiff must plead injury-in-fact for each drilling site. *Id.* at *5. The same logic applies here.

Finally, Plaintiff cannot legitimately argue that it needs discovery before it can adequately plead Article III standing, for at least two reasons. First, that argument puts the cart before the horse, as a plaintiff may not invoke the court's authority to pursue discovery unless it first satisfies Article III standing requirements at the pleading stage. *See infra* at 23-24. Second, such an argument is implausible. The Air Force has been using Paradise North for aerial jet fighter training, including at times the use of countermeasures, for decades. If anything, Plaintiff's continued failure to identify and plead sufficient facts that specify where alleged illegal discharges have occurred indicates either that no such discharges have occurred or that none of Plaintiff's members has been harmed in a concrete and particularized way.

### E.    Plaintiff Has Not Satisfied its Burden to Establish Organizational Standing.

Plaintiff has added a new basis for its Article III standing in its Amended Complaint, alleging organizational standing in its own right, based upon a single paragraph that reads as follows:

> ONDA has organizational standing to bring this action. ONDA has been actively engaged in a variety of educational and advocacy efforts to improve water quality to address sources of water quality degradation in the waters of the Owyhee River and its many tributaries throughout the Paradise North Area. The Air Force's failure to obtain an NPDES permit(s) for its discharges has deprived ONDA of information that would be required by the monitoring and reporting conditions of the permit(s), which information would be available to ONDA. This information could assist ONDA in its efforts to educate and advocate for greater environmental protection. Thus, ONDA's organizational interests have been adversely affected by the Air Force's violations. These injuries are fairly traceable to the violations and redressable by the Court.

Doc. No. 18 ¶ 20.  On their face, these allegations fail to establish Article III standing.

An organization may establish standing on its own behalf, rather than the interests of its members, but to do so the organization must satisfy the same standing requirements that apply to

an individual plaintiff. *Havens Realty Corp v. Coleman*, 455 U.S. 363, 378-79 (1982); *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Accordingly, the same pleading requirements necessary to establish injury-in-fact, causation, and redressability set out in *Spokeo* and the other case law discussed above apply to Plaintiff's assertion that it has standing in its own right. Thus, to establish standing in its own right at the pleading stage, an organization must allege sufficient factual assertions to establish that a particular violation it is pursuing injured the organization's mission and that the organization has diverted resources from its core mission to counteract that harm. *See Lake Forest*, 624 F.3d at 1088 (the organizational plaintiff must assert sufficient facts that establish that it suffers "both a diversion of its resources and a frustration of its mission") (citation omitted); *see also Friends of the Earth v. Sanderson Farms, Inc.,* 992 F.3d 939, 942 (9th Cir. 2021) ("To establish organizational standing, the [plaintiff organizations] needed to show that the challenged conduct frustrated their organizational missions and that they diverted resources to combat that conduct."). However, "courts have found that merely continuing ongoing activities does not satisfy this requirement." *Friends of the Earth*, 992 F.3d at 942. Furthermore, a plaintiff "cannot manufacture the injury by incurring litigation costs." *Lake Forest*, 624 F.3d at 1088.

Here, Plaintiff's allegations fail to establish organizational injury for several reasons. As an initial matter, Plaintiff's allegations of causation and redressability in Paragraph 20 quoted above – that "[t]hese injuries are fairly traceable to the violations and redressable by the Court" -- are wholly conclusory, lacking any factual basis, and thus inadequate. Dismissal on that basis alone is warranted.

Moreover, for many of the same reasons detailed in Section D above, Plaintiff has not met, and cannot meet, its burden to establish causation, because Plaintiff has not pled sufficient

facts regarding alleged discharges at any one location, let alone all the locations the Amended Complaint purports to cover. Thus, Paragraph 20 of the Amended Complaint does not establish that a concrete and particularized injury to Plaintiff's own interests is fairly traceable to allegedly illegal discharges at any one, let alone all, of the locations that the Amended Complaint covers.

Nor has Plaintiff alleged sufficient facts to establish a cognizable injury-in-fact to its own mission. For example, Plaintiff contends that "information [in a CWA permit or permits] could assist ONDA in its efforts to educate and advocate for greater environmental protection." Doc. No. 18 ¶ 20. Plaintiff has not, however, met its burden because it has not alleged facts establishing that it has expended additional funds, diverting those funds from its core mission, to counteract harm it asserts from the alleged illegal discharges. Plaintiff's assertion is also inadequate to establish injury-in-fact and causation because Plaintiff's alleged injury turns on the independent decision-making of a third-party, the Oregon Department of Environmental Quality, and the monitoring and reporting conditions that agency may or may not include in one or more CWA permits that Plaintiff believes are required. *See Lujan v. Defs. Of Wildlife,* 504 U.S. at 560 (the injury has to be "fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41-42 (1976)); *see also Spokeo,* 578 U.S. at 339 (the injury cannot be "'conjectural or hypothetical'") (citation omitted). Finally, Plaintiff's mere speculation that such information "could" be helpful to its mission, like its other assertions in Paragraph 20 discussed above, lacks sufficient specificity and alleged factual support.

In sum, Plaintiff has not established the elements for Article III standing in its own right at the pleading stage. The First Amended Complaint therefore should be dismissed for lack of subject matter jurisdiction.

## II.    The First Amended Complaint's Conclusory and Nonspecific Pleading Fails to State a Claim for Relief and Thus Should Be Dismissed.

To successfully state a plausible claim, a party must provide "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the pleading stage, a complaint must contain more than "an unadorned . . . accusation" of harm committed by the defendant. *Iqbal*, 556 U.S. at 678 (2009). Under Rule 8(a)(2), the "threshold requirement" is that "the plain statement possess enough heft to show that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Formulaic or conclusory recitations of elements are not sufficient to support a claim for relief. *Id.* at 679. Though a court must accept all of the claimant's well-pleaded material factual allegations as true for the purposes of resolving a motion to dismiss, as discussed *supra* at 15-16, a court should not do the same for conclusions of law or naked assertions unsupported by adequately specific alleged facts.

For the reasons detailed in Section D above, Plaintiff's *en masse* assertions fail to plead with adequate factual specificity the particular locations at which any one, let alone all, of the alleged illegal discharges have occurred. Thus, on its face, the Amended Complaint insufficiently pleads CWA violations, which are necessarily location-specific. Indeed, by relying on its *en masse* assertion that discharges have occurred in every waterbody within an area larger than Rhode Island, Plaintiff has also failed to adequately plead with any factual specificity that each of the streams it lists and the discharge locations qualify as "waters of the United States." *See, e.g.,* First Amended Complaint ¶ 42 (Doc. No. 18). Yet, establishing that a particular waterbody is a water of the United States is an essential element of proving each CWA violation. *See supra* at 4*; Comm. to Save Mokelumne River v. E. Bay Mun. Util. Dist.,* 13 F.3d 305, 308

Motion to Dismiss for Lack of Jurisdiction
and Failure to State a Claim                22

(9th Cir. 1993) (the elements of a CWA violation are "that defendants (1) discharged, i.e., added (2) a pollutant (3) to navigable waters (4) from (5) a point source."); 33 U.S.C. § 1362(7) (defining "navigable waters" to mean "waters of the United States"). In sum, Plaintiff's generalized and conclusory assertions fail to state a claim for relief.

Whether filed against a private citizen or the federal government, a citizen suit that alleges illegal discharges throughout such an enormous expanse, but does so on the basis of such broad and generalized assertions, should not proceed. Simple fairness, and the importance of providing notice to a defendant as to where the alleged illegal discharges have occurred, requires far more specificity. *See Twombly*, 550 U.S. at 555 (the complaint must allege enough facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.").

Portions of the Amended Complaint suggest that Plaintiff's real concerns are premised upon its belief that, in the future, the Air Force will conduct aerial training with countermeasures at a lower operational floor than has applied in the past. *See, e.g.,* Doc. No. 18 ¶ 45.  On this basis, Plaintiff may argue that dismissal under Rule 12(b)(6) is inappropriate because it needs discovery to gather sufficient facts to assert its claim.

Such an argument, however, should be rejected. "[T]this approach is incorrect and puts the discovery cart before the pleading horse." *Dana v. Tewalt*, No. 1:18-cv-00298-DCN, 2022 WL 3598311, at *6 n.9 (D. Idaho Aug. 23, 2022), *aff'd in part, rev'd in part and remanded sub nom. Dana v. Idaho Dep't of Corr*., 2024 WL 2862581 (9th Cir. June 6, 2024). A plaintiff must first put forth sufficient factual allegations at the pleading stage to entitle the plaintiff to discovery. *Id.; see Iqbal*, 556 U.S. at 886 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); *Mujica v. AirScan Inc*., 771 F.3d 580, 593 (9th Cir. 2014) ("The Supreme Court has stated, however, that Plaintiffs must satisfy

the pleading requirements of Rule 8 before the discovery stage, not after it.") (citing *Iqbal*).

Moreover, to the extent Plaintiff's real concerns in this lawsuit are centered on the Air Force's decision to lower the operational floor within the Paradise North training area for future flights, Plaintiff's remedy lies in challenging that decision, which it is already doing in a separate case pending in this Court. *Oregon Natural Desert Ass'n, et al. v. U.S. Dep't of the Air Force*, Case No. 2:24-cv-00145-HL (D. Or.).

## CONCLUSION

For the reasons set forth above, Plaintiff has not demonstrated Article III standing on the face of the First Amended Complaint. The Court therefore lacks subject matter jurisdiction and should dismiss that Complaint under Federal Rule 12(b)(1). In the alternative, the Court should dismiss the First Amended Complaint for failing to state a claim for which relief may be granted.

Respectfully submitted,

TODD KIM
Assistant Attorney General

*/s/   David Kaplan*
DAVID KAPLAN
Environmental Defense Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 514-0997

## CERTIFICATE OF SERVICE

I certify that on the September 26, 2024, I filed the foregoing through the CM/ECF system, which caused the parties to this matter to be served by electronic means.

*/s/ David Kaplan*
DAVID KAPLAN
*Attorney for Defendants*