**Brian A. Knutsen (OSB # 112266)**
**Emma Bruden (OSB # 163525)**
KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515 (Knutsen)
(503) 719-5641 (Bruden)
brian@kampmeierknutsen.com
emma@kampmeierknutsen.com

**Peter M. ("Mac") Lacy (OSB # 013223)**
Oregon Natural Desert Association
2009 NE Alberta St., Ste. 207
Portland, OR 97211
(503) 525-0193
lacy@onda.org

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PENDLETON DIVISION

| | |
|---|---|
| **OREGON NATURAL DESERT ASS'N**, | No. 2:23-cv-01898-HL |
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| **FRANK KENDALL III**, in his official capacity as the Secretary of the U.S. Department of the Air Force, and **U.S. AIR FORCE**, | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................................................2

TABLE OF AUTHORITIES ........................................................................................4

INTRODUCTION ......................................................................................................10

LEGAL AND FACTUAL BACKGROUND ...........................................................11

I.       THE CLEAN WATER ACT. .......................................................................11

II.      STATEMENT OF FACTS. ...........................................................................12

         A.       The Owyhee Canyonlands and the Paradise North Area.....................12

         B.       The Air Force's Illegal Discharges. .....................................................13

         C.       ONDA's Lawsuit and Interests..............................................................14

STANDARDS OF REVIEW .....................................................................................16

ARGUMENT ..............................................................................................................18

I.       The Court Should Deny the Motion to Dismiss for Lack
         of Standing. ...................................................................................................18

         A.       ONDA's Sufficiently Alleged Representational
                  Standing. ...............................................................................................18

         B.       The Air Force's Argument that ONDA Has Not Sufficiently
                  Alleged Representational Standing Is Without Merit...........................21

                  i.       The Air Force improperly imports summary judgement
                           standards into the pleading stage. ..........................................22

                  ii.      Even if the Court applied a standard akin to summary
                           judgment, ONDA's standing witnesses would not need
                           to identify precise locations of discharges or prove an
                           unpermitted discharge claim....................................................25

                  iii.     The Air Force's remaining contentions lack merit. ................28

         C.       For the CWA, Ninth Circuit Precedent and Persuasive
                  Authority Allow ONDA to Rely on Members' Standing
                  for a Representative Number of Waterbodies.......................................30

         D.       ONDA Has Sufficiently Alleged Organizational Standing
                  Stemming from an Informational Injury................................................34

II.     ONDA Stated a Claim for Relief. .......................................................................38

III.    If the Court Seeks Greater Detail, ONDA Respectfully Requests the
        Opportunity to Conduct Discovery Amend. ......................................................42

CONCLUSION ..................................................................................................................43

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*AE ex rel. Hernandez v. Cnty. of Tulare,*
    666 F.3d 631 (9th Cir. 2012) ......................................................................18, 40

*Alaska Ctr. for the Env't v. Browner,*
    20 F.3d 981 (9th Cir. 1994) ....................................................................30, 32, 33

*Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n,*
    389 F.3d 536 (6th Cir. 2004) ......................................................................35, 37

*Arkansas v. Oklahoma,*
    503 U.S. 91 (1992).............................................................................................12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................18, 23, 39, 40

*Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity,*
    950 F.2d 1401 (9th Cir. 1991) .........................................................................19

*Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.,*
    299 F.3d 1007 (9th Cir. 2002) ....................................................................11, 12

*Bell Atl. Corp v. Twombly,*
    550 U.S. 544 (2007)..................................................................17, 39, 40

*Bova v. City of Medford,*
    564 F.3d 1093 (9th Cir. 2009) .........................................................................24

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) ...........................................................................41

*Cal. Rest. Ass'n v. City of Berkeley,*
    89 F.4th 1094 (9th Cir. 2024) ..........................................................................21

*Cardenas v. Anzai,*
    311 F.3d 929 (9th Cir. 2002) .....................................................................21, 25

*Center for Biological Diversity v. U.S. Department of the Interior,*
    No. 22-cv-01716 (TSC),
    2023 U.S. Dist. LEXIS 195761 (D.D.C. Nov. 1, 2023) ..................................34

*Citizens for Better Forestry v. U.S. Dep't of Agric.,*
    341 F.3d 961 (9th Cir. 2003) ...........................................................................24

*Comm. to Save Mokelumne River v. East Bay Mun. Util. Dist.,*
    13 F.3d 305 (9th Cir. 1993) .............................................................................38

*Council of Ins. Agents & Brokers v. Molasky-Arman*,
    522 F.3d 925 (9th Cir. 2008) ..................................................................25, 26

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)..............................................................................29

*Defs. of Wildlife v. U.S. Env't Prot. Agency*,
    420 F.3d 946 (9th Cir. 2005), *rev'd on other grounds sub nom.*
    *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007)..........................31

*Degross v. Hunter*,
    No. 24-5225 DGE-RJB,
    2024 U.S. Dist. LEXIS 119377 (W.D. Wash. July 8, 2024) ............................................43

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019)..............................................................................38

*Desert Citizens Against Pollution v. Bisson*,
    231 F.3d 1172 (9th Cir. 2000) .................................................................21

*Doe v. Holy See*,
    557 F.3d 1066 (9th Cir. 2009) .................................................................40

*Ecological Rts. Found. v. Pac. Lumber Co.*,
    230 F.3d 1141 (9th Cir. 2000) ....................................................19, 25, 26, 27

*Erickson v. Pardus*,
    551 U.S. 89 (2007)...............................................................................40

*Fed. Election Comm'n v. Akins*,
    524 U.S. 11 (1998)...............................................................................35

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024)..............................................................................35

*Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*,
    674 F. Supp. 3d 959 (D. Mont. 2023)................................................11, 32, 40

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
    204 F.3d 149 (4th Cir. 2000) (en banc) ........................................................24

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000).......................................................................... *passim*

*Friends of the Santa Clara River v. U.S. Army Corps of Eng'rs*,
    887 F.3d 906 (9th Cir. 2018) ...................................................................24

*FW/PBS, Inc. v. City of Dallas,*
    493 U.S. 215 (1990) ............................................................................................31

*Gill v. LDI,*
    19 F. Supp. 2d 1188 (W.D. Wash. 1998) .........................................................35

*Hampton v. Pac. Inv. Mgmt. Co.,*
    869 F.3d 844 (9th Cir. 2017) ...........................................................................17

*Headwaters, Inc. v. Talent Irrigation Dist.,*
    243 F.3d 526 (9th Cir. 2001) ...........................................................................38

*Inland Empire Waterkeeper v. Corona Clay Co.,*
    17 F.4th 826 (9th Cir. 2021) ..................................................................... *passim*

*Knapp v. Hogan,*
    738 F.3d 1106 (9th Cir. 2013) .........................................................................40

*Laub v. U.S. Dep't of Interior,*
    342 F.3d 1080 (9th Cir. 2003) .........................................................................43

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Forsgren,*
    163 F. Supp. 2d 1222 (D. Or. 2001),
    *rev'd,* 309 F.3d 1181 (9th Cir. 2002) .............................................11, 31, 39, 43

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Forsgren,*
    309 F.3d 1181 (9th Cir. 2002) ................................................................. *passim*

*Lewis v. Casey,*
    518 U.S. 343 (1996) ..........................................................................................29

*Lopez v. Smith,*
    203 F.3d 1122 (9th Cir. 2000) .........................................................................42

*Lucas v. S.C. Coastal Council,*
    505 U.S. 1003 (1992) ............................................................................17, 22, 28

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................ *passim*

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) ..........................................................................22, 28, 29, 34

*Maya v. Centex Corp.,*
    658 F.3d 1060 (9th Cir. 2011) .............................................................16, 17, 42

*McHenry v. Renne,*
    84 F.3d 1172 (9th Cir. 1996) ...........................................................................40

*Mendia v. Garcia*,
  768 F.3d 1009 (9th Cir. 2014) .................................................................................38

*Mt. Graham Red Squirrel v. Espy*,
  986 F.2d 1568 (9th Cir. 1993) .................................................................................21

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014) ...................................................................................43

*Nat. Res. Def. Council v. Sw. Marine, Inc.*,
  236 F.3d 985 (9th Cir. 2000) ...................................................................................12

*Nat. Res. Def. Council v. U.S. Env't Prot. Agency*,
  808 F.3d 556 (2d Cir. 2015).....................................................................................39

*Nat'l Wildlife Fed'n v. Burford*,
  871 F.2d 849 (9th Cir. 1989) ...................................................................................31

*Nevijel v. N. Coast Life Ins. Co.*,
  651 F.2d 671 (9th Cir. 1981) ...................................................................................40

*Or. Nat. Desert Ass'n v. U.S. Dep't of the Air Force*,
  No. 2:24-cv-000145-HL, 2024 U.S. Dist. LEXIS 149175 (D. Or. Aug. 7, 2024),
  *adopted at* 2024 U.S. Dist. LEXIS 151537 (D. Or. Aug. 23, 2024)...........................18, 25

*Or. State Pub. Int. Rsch. Grp., Inc. v. Pac. Coast Seafoods Co.*,
  361 F. Supp. 2d 1232 (D. Or. 2005) .......................................................................12

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*,
  636 F.3d 1150 (9th Cir. 2011) .................................................................................33

*PennEnvironment v. PPG Indus., Inc.*,
  964 F. Supp. 2d 429 (W.D. Pa. 2013)......................................................................37

*Pit River Tribe v. U.S. Forest Serv.*,
  615 F.3d 1069 (9th Cir. 2010) .................................................................................38

*Presidio Golf Club v. Nat'l Park Serv.*,
  155 F.3d 1153 (9th Cir. 1998) .................................................................................19

*Proffitt v. Mun. Auth. of Borough of Morrisville*,
  716 F. Supp. 837 (E.D. Pa. 1989) ...........................................................................12

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .................................................................................16

*S.F. BayKeeper, Inc. v. Tosco Corp.*,
  309 F.3d 1153 (9th Cir. 2002) ...........................................................................41, 42

*Save Our Bays & Beaches v. City & Cnty. of Honolulu*,
    904 F. Supp. 1098 (D. Haw. 1994) ...................................................................12

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ...............................................................17, 18

*Sierra Club v. BNSF Ry. Co.*,
    No. C13-0967-JCC,
    2014 U.S. Dist. LEXIS 200930 (W.D. Wash. Mar. 12, 2014) ................................. *passim*

*Sierra Club v. BNSF Ry. Co.*,
    No. C13-0967-JCC,
    2016 U.S. Dist. LEXIS 147786 (W.D. Wash. Oct. 25, 2016) ..............................11, 32, 33

*Sierra Club v. Chevron U.S.A., Inc.*,
    834 F.2d 1517 (9th Cir. 1987) ...............................................................12, 40

*Sierra Club v. Simkins Indus., Inc.*,
    847 F.2d 1109 (4th Cir. 1988) ...............................................................35, 36

*Sierra Club v. Union Oil Co. of Cal.*,
    813 F.2d 1480 (9th Cir. 1987), *vacated on other grounds*, 485 U.S. 931 (1988),
    *reinstated and amended on other grounds*, 853 F.2d 667 (9th Cir. 1988) ......................12

*S. Utah Wilderness All. v. Palma*,
    707 F.3d 1143 (10th Cir. 2013) ...............................................................31, 33

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................ *passim*

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ...................................................................41

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)........................................................................18, 22

*U.S. ex rel. Silingo v. WellPoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) ....................................................................40

*Warth v. Seldin*,
    422 U.S. 490 (1975)........................................................................17, 25

*Wash. Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) ...................................................................24

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982)............................................................................12

*W. Watersheds Project v. Kraayenbrink*,
 632 F.3d 472 (9th Cir. 2011) ............................................................... 24

*Winyah Rivers All. v. Active Energy Renewable Power, LLC*,
 579 F. Supp. 3d 759 (E.D.N.C. 2022) .................................................. 37

*Wolfe v. Strankman*,
 392 F.3d 358 (9th Cir. 2004),
 *overruled in part on other grounds as stated in*
 *Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977 (9th Cir. 2024) ........... 17, 30

*Yamashita v. LG Chem, Ltd.*,
 62 F.4th 496 (9th Cir. 2023) ............................................................... 43

*Zixiang Li v. Kerry*,
 710 F.3d 995 (9th Cir. 2013) ....................................................... 17, 18, 41

## Statutes

28 U.S.C. § 2401 ..................................................................................... 40

33 U.S.C. § 1311 ........................................................................... 10, 11, 35

33 U.S.C. § 1318 ........................................................................... 35, 36, 38

33 U.S.C. § 1342 ........................................................................... 11, 35, 38

33 U.S.C. § 1362 ........................................................................... 10, 38, 39

## Regulations

40 C.F.R. § 120.2 ................................................................................... 39

40 C.F.R. § 122.41 ............................................................................ 35, 38

40 C.F.R. § 122.44 ............................................................................ 35, 38

40 C.F.R. § 122.48 ............................................................................ 35, 38

40 C.F.R. § 135.3 ................................................................................... 42

## Other Authorities

Fed. R. Civ. P. 8 ................................................................... 17, 30, 40, 41

Fed. R. Civ. P. 12 ....................................................................... *passim*

## INTRODUCTION

Oregon Natural Desert Association ("ONDA") brought this Clean Water Act ("CWA") citizen suit against the United States Air Force ("Air Force") for discharging pollution from aircraft into waterbodies in southeastern Oregon without any CWA authorization. The Air Force's Motion to Dismiss ("Motion") argues ONDA lacks standing and fails to state a claim, primarily because ONDA has not identified the precise location of each discharge. *See generally* ECF No. 22 at 7–30. However, "location of the discharges" is not an element of standing or unpermitted discharge claims. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); 33 U.S.C. §§ 1362(12)(A), 1311(a).

ONDA's Amended Complaint fully satisfies pleading standards under the Federal Rules of Civil Procedure. It includes sufficient factual allegations to inform the Air Force of the claim and to demonstrate that ONDA's members are injured by the challenged conduct for standing purposes; e.g., their enjoyment of impacted waters is harmed by their reasonable concerns about the Air Force's CWA violations. The Air Force fully understands the claim but has argued that a CWA permit is not required. ECF No. 18 ¶ 53. Similarly, the Air Force cannot seriously question ONDA's members' concerns that give rise to standing. Notably, the Air Force is dropping military-related materials that the Air Force admits "could collect on water surfaces" in areas regularly used by those members.

The Air Force nonetheless argues that the Amended Complaint should be dismissed if ONDA cannot specify all precise locations where the Air Force dropped flares or chaffs over the waters at issue during the applicable six-year statute of limitations period. The Air Force obviously knows that it carefully guards such information under claims of national security. When ONDA sought information relating to CWA permitting under the Freedom of Information

Act, the Air Force redacted nearly every document in full. In a public comment process, the Air

Force ignored ONDA's requests to quantify the pollution. *Id.* ¶ 45. The Air Force now seeks to

exploit that asymmetry of information between the parties by insisting that ONDA identify

information exclusively within the Air Force 's possession. The Court should reject such

gamesmanship.

The Air Force is unable to point to any binding or persuasive precedent requiring a CWA

plaintiff to identify the precise location of every discharge at the pleading stage. Instead, the only

comparable cases in this Circuit involving mobile point sources support the adequacy of

ONDA's pleadings. *See League of Wilderness Defs./Blue Mountains Biodiversity Project v.*

*Forsgren*, 163 F. Supp. 2d 1222 (D. Or. 2001), *rev'd*, 309 F.3d 1181 (9th Cir. 2002); *Sierra Club*

*v. BNSF Ry. Co.*, No. C13-0967-JCC, 2014 U.S. Dist. LEXIS 200930 (W.D. Wash. Mar. 12,

2014) & 2016 U.S. Dist. LEXIS 147786 (W.D. Wash. Oct. 25, 2016); *Forest Serv. Emps. for*

*Env't Ethics v. U.S. Forest Serv.* ("*FSEEE*"), 674 F. Supp. 3d 959 (D. Mont. 2023). The Court

should deny the Motion and allow this matter to proceed.

## LEGAL AND FACTUAL BACKGROUND

## I.    THE CLEAN WATER ACT.

"A cornerstone of the [CWA] is that the 'discharge of any pollutant' from a 'point

source' into navigable waters of the United States is unlawful unless the discharge is made

according to the terms of an NPDES permit[.]" *Ass'n to Protect Hammersley, Eld, & Totten*

*Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1009 (9th Cir. 2002); *see* 33 U.S.C. §§ 1311(a), 1342.

Discharges of pollutants from aircraft to waters of the United States are subject to that

prohibition. *See Forsgren*, 309 F.3d at 1183–90; *FSEEE*, 674 F. Supp. 3d at 965. NPDES

permits are the "primary means" for achieving the CWA's goals and are thus a critical part of the

regulatory scheme. *Arkansas v. Oklahoma*, 503 U.S. 91, 101–02 (1992).

"The [CWA] explicitly allows private citizens to bring enforcement actions[.]" *Ass'n to Protect Hammersley*, 299 F.3d at 1012; 33 U.S.C. § 1365(a)(1), (f). "Citizen suits should be handled liberally, because they perform an important public function:" "citizens should be unconstrained to bring these actions, and" "the courts should not hesitate to consider them." *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir. 1987) (quoting legislative history); *see also Save Our Bays & Beaches v. City & Cnty. of Honolulu*, 904 F. Supp. 1098, 1125–26 (D. Haw. 1994); *Proffitt v. Mun. Auth. of Borough of Morrisville*, 716 F. Supp. 837, 844 (E.D. Pa. 1989) (discussing legislative history).

"The CWA imposes strict civil liability," and does not excuse rare or de minimis violations. *Or. State Pub. Int. Rsch. Grp., Inc. v. Pac. Coast Seafoods Co.*, 361 F. Supp. 2d 1232, 1240 (D. Or. 2005); *see Sierra Club v. Union Oil Co. of Cal.*, 813 F.2d 1480, 1490–91 (9th Cir. 1987), *vacated on other grounds*, 485 U.S. 931 (1988), *reinstated and amended on other grounds*, 853 F.2d 667 (9th Cir. 1988); *Save Our Bays & Beaches*, 904 F. Supp. at 1105. Courts retain broad discretion in determining whether injunctive relief is warranted and in fashioning such relief. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982); *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 999–1001 (9th Cir. 2000).

## II.    STATEMENT OF FACTS.

### A.    <u>The Owyhee Canyonlands and the Paradise North Area</u>.

"The Owyhee Canyonlands [in southeastern Oregon] are a national treasure, featuring miles upon miles of deep rugged canyons and rolling sagebrush steppe" that "support[] a diversity of fish and wildlife." ECF No. 18 ¶ 1. "This expanse of sagebrush steppe" "is home to more than 350 species of fish and wildlife," including several sensitive fish species like Interior

redband trout, Lahontan cutthroat trout, and bull trout." *Id.* ¶¶ 32, 48.

The Paradise North Military Operations Area spans 968,783 acres in southeastern Oregon and includes approximately 604 waterbodies. *Id.* ¶¶ 12 (map), 42, pp. 41, 52. Over 500 waterbodies in this area are unnamed creeks of less than 10 miles. *Id.* at 42–52. Less than twenty waterbodies have over ten miles in the Paradise North Area, and only four are over thirty miles: Antelope Creek, the Owyhee River, Toppin Creek, and the West Little Owyhee River. *Id.*

The mainstem Owyhee River is approximately 280 miles long, with 35–40 miles in the Paradise North Area. *Id.* ¶ 35. It enters the eastern portion of the Paradise North Area from Idaho, and it ultimately flows to the Snake River and then the Columbia River. *Id.* As relevant here, the Owyhee's main tributaries are the West Little Owyhee River, the North Fork Owyhee River, Crooked Creek, and Antelope Creek. *Id.* ¶¶ 36–39. Antelope Creek is approximately 40–45 miles long, and it is located entirely in the Paradise North Area. *Id.* ¶ 39; *see generally id.* at 42–52. Nearly all streams in the Paradise North Area flow, either directly or indirectly, to the Owyhee River. *Id.* ¶ 41; *see id.* ¶ 12 (map).

The longest waterbody in this area is, by far, the West Little Owyhee River, at approximately 60 to 65 miles. *Id.* ¶ 36, pp. 41–52. It is located entirely in the Paradise North Area. *Id.* The vast majority of this river, like portions of the Owyhee and North Fork Owyhee Rivers, has been designated under the National Wild and Scenic Rivers Act. *Id.* ¶ 33. Toppin Creek is a tributary to the West Little Owyhee River, and approximately 35–40 miles of the creek are in the Paradise North Area. *Id.* ¶ 36.

**B.**    **The Air Force's Illegal Discharges.**

The Mountain Home Air Force Base conducts aircraft training missions within six Military Operations Areas, including the Paradise North Area. *Id.* ¶¶ 42, 52; *see id.* ¶ 12 (map).

Some exercises include releases of chaff and flares. *Id.* ¶ 42. "Chaff consists of reflective, aluminum-coated glass fibers and is stored in canisters that contain millions of fibers that are dispensed from aircraft when a missile attack is imminent." *Id.* Chaff "fibers create a 'RADAR cloud' and then drop to the ground." *Id.* "Flares are pyrotechnic devices that consist of highly flammable materials" and plastic end caps. *Id.* Materials from chaff and flares that are "discharged from aircraft during training missions are being discharged into waters of the United States" within the Paradise North Area. *Id.*; *see also id.* ¶ 43 (explaining that the Air Force has acknowledged this pollution "could collect on water surfaces").

Aluminum and copper from the chaff could cause detrimental effects to aquatic species, humans, and other wildlife. *Id.* ¶ 45. Those metals can be toxic to sensitive trout species at very low levels." *Id.* ¶ 46, p. 36 (identifying studies establishing toxicity of these metals).

ONDA repeatedly informed the Air Force that its "training activities were damaging fish and wildlife habitat and water resources and were in violation of the CWA." *Id.* ¶ 45. The Air Force did not deny its discharges, but nonetheless declined to obtain the required NPDES permit, or even "to quantify the amount of copper that aquatic species and their habitats might be exposed to." *Id.* ¶¶ 45, 52. Instead, the Air Force asserted, contrary to controlling precedent, "that 'military aircraft are not point sources under the CWA and the [NPDES] does not apply.'" *Id.* ¶ 53; *Forsgren*, 309 F.3d at 1185.

### C.    **ONDA's Lawsuit and Interests**.

ONDA is a non-profit, public interest organization that seeks to protect, defend, and restore forever Oregon's high desert, including the Owyhee Canyonlands. ECF No. 18 ¶¶ 1, 10. ONDA filed this CWA citizen suit on December 15, 2023, to bring the Air Force into compliance with the CWA. *Id.* ¶¶ 7, A–G.

ONDA seeks relief on behalf of itself and its approximately 18,000 members and supporters. *Id.* ¶¶ 10, 20. ONDA is engaged in protecting water quality in the Paradise North Area, and, if the Air Force complied with CWA permitting requirements, ONDA would use information generated by the Air Force under the permitting requirements. *Id.* ¶ 20.

"Many of ONDA's members regularly use and enjoy, and intend to continue to use and enjoy, the waters and surrounding public lands and natural resources throughout the Air Force's Paradise North Military Operations Area that are adversely impacted by the Air Force's unlawful discharges, for recreational" and other purposes, for activities like rafting and hiking. *Id.* ¶¶ 11, 14. Various members enjoy different waterbodies, such that, "collectively, [they] use waterbodies and tributaries throughout the Paradise North Military Operations Area, including but not limited to the Owyhee River, the West Little Owyhee River, the North Fork Owyhee River, the Middle Fork Owyhee River, Antelope Creek and/or Big Antelope Creek, Toppin Creek, Pole Creek, Tent Creek, Rattlesnake Creek, Field Creek, Little Rattlesnake Creek, Jack Creek, Steer Canyon, and Dry Creek." *Id.* ¶ 14.

These members "have been, are being, and will be adversely affected by the Air Force's illegal discharges of pollutants and by [their] reasonable concerns related to the effects of the discharges." *Id.* They are further concerned about the Air Force evading CWA permitting requirements and the related lack of monitoring, reporting, and efforts to minimize pollution. *Id.*

ONDA's Amended Complaint provides several examples of members using the primary waterbodies in the Paradise North Area and describing their reasonable concerns about the Air Force's discharges adversely affecting their interests. *Id.* ¶¶ 15–19. These members provide a few stories of their uses in the primary waterbodies of the Paradise North Area. *Id.* They are all

aware of the Air Force's training operations and discharges throughout the Paradise North Area, and express concerns about that pollution impacting their interests. *Id.*

To provide just one example, one member has "crisscross[ed] through essentially all of the Paradise North Area." *Id.* ¶ 15. They enjoy hiking and paddling, particularly along the Owyhee and West Little Owyhee Rivers, and they "regularly drink[] out of [those] water sources when using the remote Paradise North Area." *Id.* On one trip, they paddled from the confluence of the West Little Owyhee River and the Owyhee River to the Owyhee Dam at Lake Owyhee State Park. *Id.* This trip therefore started in the Paradise North Area and continued outside that area on the Owyhee River, "downstream of nearly all of the Air Force's discharges." *Id.* ¶¶ 15, 35–36. This member plans to return to these rivers next year. *Id.* "This member is aware of the Air Force's illegal discharges in the Paradise North Area and the connectivity and distances between many of the smaller tributaries and the main waterbodies in the Paradise North area." *Id.* And they are "concerned about the Air Force illegally polluting the water sources they use and drink from on their trips, and about the impacts these chemicals have on the aquatic species that make up the environment in the Paradise North Area that th[ey] enjoy[.]" *Id.* These concerns "adversely impact[] their use and enjoyment" of these rivers. *Id.*

### STANDARDS OF REVIEW

Courts review motions to dismiss for lack of Article III standing under Rule 12(b)(1) as motions to dismiss for lack of subject matter jurisdiction. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The Air Force's Motion is a facial attack—one that asserts that the complaint's allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); ECF No. 22 at 6. The Court should consider plaintiff's allegations as true and draw all reasonable inferences in plaintiff's favor.

*Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), *overruled in part on other grounds as stated in Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977 (9th Cir. 2024). Dismissals for lack of subject matter jurisdiction are without prejudice because the Court lacks jurisdiction "to adjudicate the merits." *Hampton v. Pac. Inv. Mgmt. Co.*, 869 F.3d 844, 846 (9th Cir. 2017).

The elements of standing are an "indispensable part of the plaintiff's case" that "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife* ("*Lujan*"), 504 U.S. 555, 561 (1992); *see also Maya*, 658 F.3d at 1068. "For purposes of ruling on a motion to dismiss for want of standing," "courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (citation omitted); *see also Maya*, 658 F.3d at 1068. Only later can the plaintiff "no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" that demonstrate standing. *Lujan*, 504 U.S. at 561; *see also Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992).

A motion to dismiss for failure to state a claim is reviewed under Rule 12(b)(6). "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 n.3 (2007)). Dismissal "is 'proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d

1035, 1041 (9th Cir. 2010) (citation omitted). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[The Court is to] accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).

## ARGUMENT

The Court should deny the Motion for lack of standing because ONDA has sufficiently alleged both representational and organizational standing, even though only one is needed. *See Or. Nat. Desert Ass'n v. U.S. Dep't of the Air Force*, No. 2:24-cv-000145-HL, 2024 U.S. Dist. LEXIS 149175, at *10–11 (D. Or. Aug. 7, 2024), *adopted at* 2024 U.S. Dist. LEXIS 151537 (D. Or. Aug. 23, 2024) (explaining court need only address representational or organizational standing). The Court should deny the Motion for failure to state a claim because ONDA has pled far more facts than necessary to provide the Air Force notice of the claim. *See Kerry*, 710 F.3d at 998.

## I.     The Court Should Deny the Motion to Dismiss for Lack of Standing.

### A.     ONDA Sufficiently Alleged Representational Standing.

An organization has standing to bring suit on behalf of its members when (1) at least one member would otherwise have standing to sue in their own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Laidlaw*, 528 U.S. at 180–81; *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (explaining "at least one" member must

have standing). The Air Force does not challenge the second or third element. Nor could it. *See* ECF No. 18 ¶ 10; *Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1159 (9th Cir. 1998); *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1408–09 (9th Cir. 1991).

For the first element, a member has standing if they can show (1) they have suffered an injury in fact that is concrete, particularized, and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the defendant's action; and (3) it is likely that the injury will be redressed by a favorable decision. *Laidlaw*, 528 U.S. at 180–81. An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way," and an injury is "concrete" if it is "real." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016) (citation omitted). An injury is actual or imminent if it is currently happening or is "certainly impending." *Lujan*, 504 U.S. at 564 n.2.

"In an environmental case, the 'relevant showing'" "is not injury to the environment but injury to the plaintiff." *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 826, 832 (9th Cir. 2021) (quoting *Laidlaw*, 528 U.S. at 181). A plaintiff can show injury "by showing a connection to the area of concern sufficient to make credible the contention that the person's future life will be less enjoyable—that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction—if the area in question remains or becomes environmentally degraded." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000). "[T]he threshold question" "is whether an individual can show that *she* has been injured in her use of a particular area **because of concerns about violations of environmental laws**[.]" *Id.* at 1151 (bold emphasis added).

ONDA plainly alleges facts showing that some of its members have standing. Members are injured because they "regularly enjoy" the waters and public lands throughout the Paradise North Area "that are adversely impacted by the Air Force's unlawful discharges." ECF No. 18 ¶¶ 10, 14. For example, one member has "crisscross[ed] through essentially all of the Paradise North Area," and on one trip, they hiked and paddled along the West Little Owyhee River and the mainstem Owyhee River—the two most significant waterbodies in this lawsuit. *Id.* ¶ 15; *see* ¶¶ 35–36. This member plans to return next year. *Id.* ¶ 15. Based on this member's knowledge of the Air Force's activities and of the waterbodies throughout the area, this member is "concerned about the Air Force illegally polluting the water sources they use and drink from" "and about the impacts these chemicals have on the aquatic species" they enjoy. *Id.* These concerns "adversely impact" their "use and enjoyment of the West Little Owyhee and the mainstem Owyhee." *Id.* In addition to that example, ONDA identified several other members who: (1) use waterbodies in the Paradise North Area, (2) are aware of the Air Force's illegal discharges, and (3) are concerned about those discharges, which adversely impacts their uses. *Id.* ¶¶ 16–19.

The injuries are real and actual because ONDA's members currently experience the concerns that impact their activities. *Id.* ¶¶ 11, 14; *e.g.*, *id.* ¶¶ 15–19; *see Spokeo*, 578 U.S. at 340. The injuries are particularized because there are specific members of ONDA that use the affected area, know about the Air Force's discharges, and experience unique concerns about those discharges that harm their interests. ECF No. 18 ¶¶ 11, 14; *e.g.*, *id.* ¶¶ 15–19; *Spokeo*, 578 U.S. at 339 (collecting cases where injury is particularized if plaintiff personally suffered).

Further, the injuries are traceable to the Air Force because the Air Force causes the concerns by illegally discharging pollution (and by disclosing the discharges to the public), and this Court can redress those concerns by finding the Air Force's conduct to be unlawful and

issuing appropriate injunctive and other relief. ECF No. 18 ¶ 12 (alleging discharges and impacts throughout the Paradise North Area); *e.g.*, *id.* ¶¶ 15–19 (providing examples of concerns that stem from the pollution), 43 (Air Force disclosed that its pollution "could collect" on waters); *see Inland Empire Waterkeeper*, 17 F.4th at 832 (explaining discharges decreasing enjoyment is sufficient causation and injunctive relief authorized under CWA establishes redressability).

ONDA's allegations far surpass those courts routinely find sufficient at the pleading stage. *E.g.*, *BNSF Ry.*, 2014 U.S. Dist. LEXIS 200930, at *20–25 (finding allegations that the "environmental, health, aesthetic, and recreational interests of Plaintiffs' members have been, are being, and will be adversely affected by the purported coal discharges" and "that their members will uniquely suffer" sufficient at the pleading stage) (internal punctuation omitted); *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2024) (association of restauranters sufficiently pled standing where restaurants rely on natural gas and "one or more of [the association's] members would like to open or relocate a restaurant in a new Berkeley building completed after the Ordinance [banning new natural gas] became effective"); *Cardenas v. Anzai*, 311 F.3d 929, 933 (9th Cir. 2002); *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1176–77 (9th Cir. 2000); *Mt. Graham Red Squirrel v. Espy*, 986 F.2d 1568, 1581–82 (9th Cir. 1993). Accordingly, ONDA has sufficiently alleged representational standing.

### B.   The Air Force's Argument that ONDA Has Not Sufficiently Alleged Representational Standing Is Without Merit.

The Air Force's primary argument is that ONDA needs to plead standing at each precise location of a discharge through members inventorying specific evidence, rather than, as the Air Force claims, discussing the area "roughly in the vicinity" of the Air Force's discharges. *See* ECF No. 22 at 15–22. The Air Force provides several permutations of this argument, all of which the Court should reject.

i.    <u>**The Air Force improperly imports summary judgement standards into the pleading stage.**</u>

The Air Force argues that ONDA's allegations of "generalized harm" are insufficient. ECF No. 22 at 15–16, 20–22. With this point, the Air Force relies on summary judgment standards, even though the Supreme Court has explained that general factual allegations suffice at this stage of the litigation. The Court should reject this effort and instead follow established precedent distinguishing standing burdens at the pleading stage and summary judgment stage.

Indeed, many of the cases the Air Force cites in support of its argument fault the plaintiff for providing "general allegations" at the summary judgment or trial stage. *Summers*, 555 U.S. at 492, 500 (faulting plaintiff for failing to include sufficient specificity at trial); *Lujan*, 504 U.S. at 563–64; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 880–89 (1990). The Supreme Court has explained that such "general allegations of injury in fact" "at the pleading stage" are acceptable. *Lucas*, 505 U.S. at 1012 n.3 (citing *Lujan*, 504 U.S. 555); *Nat'l Wildlife Fed'n*, 497 U.S. at 888–89 (explaining that "general allegations" would be sufficient at pleading stage because court must presume they "embrace those specific facts that are necessary"). It has therefore encouraged courts not to conflate standing cases at different stages of litigation. *Nat'l Wildlife Fed'n*, 497 U.S. at 889.

The Air Force's primary defense to its reliance on summary judgment cases is to twist *Spokeo*, and consequently *Iqbal*. ECF No. 22 at 19, 21–22. Citing *Spokeo*, it claims that courts "have clarified that a pleading must allege the essential, particularized" and concrete facts. *Id.* That misreads *Spokeo*, which does not require "particularized and concrete facts"; i.e., specific and detailed facts. Rather, *Spokeo* requires **the injury** to be "particularized" and "concrete." 578 U.S. at 339–40. In the injury context, "concrete" means "real" or actually existing, and "particularized" means affecting a person in some individualized way. *Id.*

ONDA's pleadings show that the injuries are "concrete" and "particularized" within the meaning of *Spokeo* through both general and specific factual allegations The injuries are concrete—i.e., they actually exist—because there are real members currently suffering. ECF No. 18 ¶¶ 11, 14; *Spokeo*, 578 U.S. at 339–40. They are particularized—i.e., individualized—because there are many members uniquely suffering. ECF No. 18 ¶¶ 11, 14; *Spokeo*, 578 U.S. at 339–40. Several specific examples of members' use confirm this. ECF. No. 18 ¶¶ 15–19.

Citing *Iqbal*, the Air Force claims that pleading allegations cannot be "naked" or "conclusory." ECF No. 22 at 21. The plaintiff there failed to state a constitutional discrimination claim related to treatment during detention. 556 U.S. at 677–80. The claim required the plaintiff to plead facts showing that the defendant "adopted and implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin." *Id.* at 677. The Court did not credit the "naked" and "conclusory" assertions that simply recited elements of the claim, such as "[defendants] 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" *Id.* at 680–81. The Court then found that the plaintiff did not state a claim because the actual factual allegations that the court credited as true—such as, defendant approved of a "policy of holding" "detainees in highly restrictive conditions"—did not allege that the policy was *because of* race, religion, or national origin, so did not show "purposeful discrimination." *Id.* at 681–83.

ONDA's allegations, however, are far from "naked" or "conclusory." ONDA does not simply assert that its members suffer an injury that is concrete and particularized, actual or imminent, and fairly traceable to defendant. Rather, ONDA alleges, for example, that one

member hikes and paddles in the Owyhee and West Little Owyhee Rivers, knows about the Air Force's activities, and is concerned about the Air Force's pollution on those rivers they use, which in turn adversely impacts their enjoyment of those rivers. *E.g.*, ECF No. 18 ¶ 15; *see also id.* ¶¶ 11–14, 16–19. The Air Force's idea that those allegations are conclusory seems to stem from its misreading of *Spokeo* to require specific and detailed facts. *Spokeo*, 578 U.S. 339–40.

    In addition to those cases, the Air Force cites several other summary judgment cases, but they do not support its arguments because the cases involve (1) a plaintiff failing to provide sufficient standing evidence at later stages; (2) a plaintiff actually establishing standing at later stages through detailed evidence; or (3) the court discussing basic standing jurisprudence with little relevance to the specific issues before this Court. *E.g.*, *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1139–47 (9th Cir. 2013) (finding plaintiff lacked standing on appeal of summary judgment because of unique causation and redressability issues); *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969–76 (9th Cir. 2003) (reversing ruling after summary judgment and holding plaintiffs established standing through introduction of specific evidence); *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 482–86 (9th Cir. 2011) (finding, after appeal of summary judgment, that plaintiffs and intervenor defendants proved standing through member declarations); *Friends of the Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 917–20 (9th Cir. 2018) (affirming standing on appeal after summary judgment); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156–63 (4th Cir. 2000) (en banc) (reversing dismissal for want of standing); *Bova v. City of Medford*, 564 F.3d 1093, 1096–97 (9th Cir. 2009) (discussing elements of standing; finding case on appeal after summary judgment unripe).

In short, this Court should reject the Air Force's calls for detailed facts like those required for summary judgment. *See Or. Nat. Desert Ass'n*, 2024 U.S. Dist. LEXIS 149175, at *7–8. Instead, it should find that the Amended Complaint appropriately provided "general factual allegations of injury resulting from the defendant's conduct." *Cardenas*, 311 F.3d at 933 (quoting *Lujan*, 504 U.S. at 561). And this Court should then "presume[] that general allegations embrace those specific facts that are necessary to support the claim"; and to the extent there is any ambiguity, the Court should draw all inferences in ONDA's favor. *Or. Nat. Desert Ass'n*, 2024 U.S. Dist. LEXIS 149175, at *8 ("Under a Rule 12(b) motion to dismiss on the pleadings, the Court presumes that general allegations embrace those specific facts that are necessary to support the claim." (citing *Lujan*, 504 U.S. at 561 (internal punctuation omitted)); *Warth*, 422 U.S. at 501.

      **ii.**      **Even if the Court applied a standard akin to summary judgment, ONDA's standing witnesses would not need to identify precise locations of discharges or prove an unpermitted discharge claim.**

The Air Force argues that ONDA has failed to establish injury and causation because it has not identified the precise location of each discharge, identified when the discharges occurred, identified what pollutant was discharged at each location, and explained individual member observations or detections of pollution. ECF No. 22 at 16–20. **ONDA is aware of no case requiring such a showing in a pleading, or even at trial, and the Air Force does not cite such a case.** That is likely because such information is not an element of standing, and indeed much of it is not even required to prove the merits of the claim at trial. *See infra* at 38–39 (discussing elements of this CWA claim). Instead, the relevant standard only requires "a connection to the area of concern sufficient to make credible the contention that the person's future life will be less enjoyable," and the injury need only present an "identifiable trifle" to provide this Court with jurisdiction. *Pac. Lumber*, 230 F.3d at 1149; *Council of Ins. Agents &*

*Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008); *see also Laidlaw*, 528 U.S. at 183–84.

Indeed, while ONDA is aware of no case requiring a member to identify the exact location of the discharge, the precise time of the discharge, the exact pollution in the discharge, and individual observations or detections of the discharges, courts routinely find standing **at the summary judgment or trial stage without that level of detail**.

For example, in *Laidlaw*, the plaintiff demonstrated standing because its members wanted to recreate near a river but refrained from doing so based on concerns about defendant's polluted discharges several miles upstream from where they recreate. 528 U.S. at 181–83. The members generally discuss "pollution" concerns without mentioning mercury (the specific pollutant of concern), and do not observe pollution from the facility. *Id.* at 181–83.[1] None of the members had seen, smelled, or otherwise directly appreciated the actual pollution at issue in *Laidlaw*—nor could they because mercury pollution discharged in the low parts per billion concentration range would be invisible and odorless—and some members steered clear of the facility all together because of the pollution. *Id.* at 176, 178 (explaining mercury permit limit and violations), 181–83 (discussing uses). The Supreme Court found that sufficient and emphasized that plaintiffs need not demonstrate that the defendant's conduct actually harms the environment to have standing; only that members have reasonable concerns. *Id.* at 183–85; *see also Pac. Lumber*, 230 F.3d at

---

[1] Examples of the different members' concerns that impact their activities include: (1) one member was concerned that the water "looked and smelled polluted," and—with no specific evidence—that it was "polluted by [defendant's] discharges"; (2) another member was concerned "about harmful effects from discharged pollutants"; (3) another member refrained from activities "because of the discharges"; (4) another member was "concerned that the water contained harmful pollutants. *Id.*

1151 ("Requiring the plaintiff to show actual environmental harm as a condition for standing confuses the jurisdictional inquiry" "with the merits inquiry[.]").

As another example, in *Pacific Lumber*, the Ninth Circuit found standing where members testified about visiting a creek and changing their use because of pollution concerns. 230 F.3d at 1150–52. One member testified that he "visit[ed] the creek" and that "he is less likely to swim there in the future, because he now has information that suggests to him that the creek may be polluted." *Id.* at 1144–45. Another member testified that he recreates "on and downstream of" the creek, and that "his enjoyment of [the] [c]reek and the downstream waterways is impaired by [defendant's] discharges of pollutants[.]" *Id.* at 1145. Nothing suggests that the members witnessed pollution or knew the timeframes of the discharges, the precise pollutants, or other nitty-gritty details of the legal violation. *See id.* at 1144–45, 1150–52. Instead, the members had standing because they "have used the creek" "and "alleged that [defendant's] conduct has impaired their enjoyment of those activities." *Id.* at 1150–51.

ONDA's pleading comports with the applicable standards, and, in fact, has details comparable to *Laidlaw* and *Pacific Lumber*, even though those cases involved stages subsequent to pleading. Individual members use specific waterbodies in the Paradise North Area and just outside the Paradise North Area "downstream of nearly all of the Air Force's discharges," are aware of the discharges, and those pollution discharges cause them concerns that reduce their enjoyment. ECF No. 18 ¶¶ 15–19. ONDA has therefore pled facts sufficient for summary judgment because members "have used the creek[s]" "and have alleged that [defendants'] conduct has impaired their enjoyment of those activities." *Pac. Lumber*, 230 F.3d at 1150–51; *Laidlaw*, 528 U.S. at 183–85. And because it pled injury based on the members' knowledge of

the illegal pollution, ONDA has sufficiently pled causation. ECF No. 18 ¶¶ 12, 15–19; *see Inland Empire Waterkeeper*, 17 F.4th at 832.

### iii.    The Air Force's remaining contentions lack merit.

In addition to improperly importing summary judgment standards and demanding far more detail than is required at later stages of litigation, the Air Force makes four other fleeting arguments that this Court should reject. *See* ECF No. 22 at 12–22.

First, the Air Force suggests members' interests are inadequate because precedent dictates that interests cannot be "roughly in the vicinity" of the affected area. *Id.* at 15–16. This misunderstands ONDA's allegations, because those cases fault a plaintiff for using an area near the "affected" area instead of using the area actually affected by the defendant's conduct. *Lujan*, 504 U.S. at 565–66 (explaining a member cannot be injured by using "portions of an ecosystem not perceptibly affected by the unlawful action"); *see also Nat'l Wildlife Fed'n*, 497 U.S. at 889 (for summary judgment, explaining that plaintiff must connect the area they use to that where pollution occurred).

ONDA alleges that "the Air Force discharges pollution from aircraft into waterbodies" "throughout the Paradise North" "Area and/or the discharges adversely impact all waterbodies, named and unnamed, throughout the Paradise North" Area. ECF No. 18 ¶ 12. And ONDA members use those areas. *Id.* ¶ 14. Thus, it is not that ONDA's members use the environment near the area adversely impacted by the Air Force's illegal discharges; rather, they use the actual adversely impacted environment. Further, while some cases cited by the Air Force fault the plaintiff at summary judgment for failing to clearly connect the dots between the "affected area" and the "area of use," a plaintiff need not do the same at the pleading stage. *Lucas*, 505 U.S. at 1012 n.3 ("*Lujan*, since it involved the establishment of injury in fact at the *summary judgment stage*, required specific facts to be adduced by sworn testimony; had the same challenge to a

generalized allegation of injury in fact been made at the pleading stage, it would have been unsuccessful.") (citing *Lujan*, 504 U.S. 555)); *see Nat'l Wildlife Fed'n*, 497 U.S. at 888–89.

Second, the Air Force cites other standing cases that only provide relevant background principles. *See* ECF No. 22 at 12–22. For example, it cites *Lewis v. Casey* for the principle that "standing is not dispensed of in gross," and *DaimlerChrysler Corp. v. Cuno* for the principle that a plaintiff must establish standing for each form of relief it seeks. *Casey*, 518 U.S. 343, 358 n.6 (1996); *Cuno*, 547 U.S. 332, 351–52 (2006). Here, ONDA pled standing for the entire affected area that corresponds with the illegal discharges, providing this Court jurisdiction to hear the entire case. ECF No. 18 ¶¶ 12, 14, 58, A–E.

Third, the Air Force faults ONDA for separating the names of the 604 waterbodies in the Paradise North Area from the map. ECF No. 22 at 17–18. ONDA separated the map from the list for ease of reading. *See* ECF No. 18 ¶ 12, pp.41–52. It is entirely unclear how combining the two would aid in understanding the allegations. ONDA has identified the waterbodies throughout the area in two ways, so both parties and the Court know the impacted area of concern here.

Finally, the Air Force faults ONDA for using an "and/or" statement in one paragraph of its pleading. ECF No. 22 at 20. It is unclear how this one statement renders the Air Force so confused that it cannot understand ONDA's standing allegations. Elsewhere, ONDA makes clear that waters throughout the Paradise North Area receive discharges and are adversely impacted by the Air Force's illegal discharges, and ONDA provided specific descriptions of members' use and concerns and of the most important waterbodies in the Paradise North Area. *E.g.*, ECF No. 18 ¶¶ 11 ("the adverse impacts to the waterbodies" "throughout the Paradise North Area"), 13 (in conjunction with paragraphs 35–41, identifying the "adversely impacted" waterbodies), 14 ("members regularly use" "the waters and surrounding lands" throughout the Paradise North

"Area that are adversely impacted by the Air Force's unlawful discharges" and members "use waterbodies and tributaries throughout the Paradise North" Area and are concerned because the Air Force "discharges into waterbodies throughout the Paradise North Area"). To the extent paragraph 12 lacks clarity, ONDA respectfully requests, when read in context with the rest of the complaint, that the Court draw all reasonable inferences in ONDA's favor to conclude that the Air Force's discharges adversely impact the waterbodies throughout the Paradise North Area. *Id.* ¶ 12, pp. 41–52; *Wolfe*, 392 F.3d at 362; *see also* Fed. R. Civ. P. 8(d)(2) (explaining that if "a party makes alternative statements, the pleading is sufficient if any one of them is sufficient"), (e) (requiring court to construe pleadings "so as to do justice").

> **C.**     **For the CWA, Ninth Circuit Precedent and Persuasive Authority Allow ONDA to Rely on Members' Standing for a Representative Number of Waterbodies.**

As established above, ONDA has pled standing for several waterbodies in the Paradise North Area that are adversely affected by the Air Force's discharges. *See supra* at 15–16, 26–28. Indeed, ONDA has provided specific examples of members' standing on the Owyhee River (including downstream of nearly all illegal discharges) and several other rivers. ECF No. 18 ¶¶ 15–19. At this stage and at later stages of the litigation, that showing of standing at a "representative number of waters" is sufficient to establish standing throughout the Paradise North Area.

The Ninth Circuit has established that, at summary judgment, an organization can establish standing for large geographic areas by demonstrating a member uses a "representative number of waters" or subsets of areas that are adversely affected by a defendant's conduct. *See, e.g.*, *Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981, 984–85 (9th Cir. 1994) (finding that standing for a representative number of Alaska's many waterbodies was sufficient to establish standing for plaintiffs to challenge EPA's failure to establish "total maximum daily loads" in

Alaska under the CWA); *Defs. of Wildlife v. U.S. Env't Prot. Agency*, 420 F.3d 946, 950, 957

(9th Cir. 2005) (holding that, where a challenged action involved impacts throughout a state,

plaintiff established injury through use of "specific [adversely impacted] subareas" within the

state), *rev'd on other grounds sub nom. Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551

U.S. 644 (2007); *Nat'l Wildlife Fed'n v. Burford*, 871 F.2d 849, 853 (9th Cir. 1989); *see also S.*

*Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1155–56 (10th Cir. 2013).

As mentioned, ONDA is aware of only three cases in this circuit involving roaming

unpermitted discharges, where the defendant moves its point source and discharges pollution

across an area. In *Forsgren*, the unpermitted discharge claim involved the Forest Service aerially

spraying insecticides from aircraft throughout 700,000 acres in multiple states. 309 F.3d at 1183.

At summary judgment, the evidence before the court about discharges to navigable waters was

the defendant's admission that "some of the [spray areas] are along streams and bodies of

water"; that "insecticide application along streams could result in some spray deposited directly

into water"; and that "it is prudent to assume that there could be mortality." 163 F. Supp. 2d at

1240. On appeal, the Ninth Circuit treated plaintiff's claim in the aggregate, even though there

may be individual discharges, found the conduct of spraying directly "over covered waters"

illegal, and enjoined the conduct until the Forest Service obtained a permit. 309 F.3d at 1183–85,

1193. In doing so, the Ninth Circuit necessarily assured itself of jurisdiction without discussion,

even though the plaintiff presented no evidence of individual discharges in each waterbody.

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("Every federal appellate court has a

special obligation to 'satisfy itself . . . of its own jurisdiction'" "even [if] the parties are prepared

to concede it." (citation omitted)).

In *BNSF Railway* and *FSEEE*, two district courts in this circuit expressly found standing based on members using a representative sample of waterbodies affected by unpermitted discharges. *BNSF Railway* involved allegations that a company violated the CWA by discharging coal into waterbodies as trains traveled throughout Washington. 2016 U.S. Dist. LEXIS 147786, at *2–4, 11. The defendant argued on a motion to dismiss and at summary judgment that the plaintiff lacked standing. In its motion to dismiss, the defendant argued that the plaintiffs "need to 'establish standing for each claimed discharge at each location of each named water'" throughout the state. *BNSF Ry.*, 2014 U.S. Dist. LEXIS 200930, at *18. The court explained that, while the plaintiff alleged multiple continuing violations of the CWA, in effect, they "assert one central claim: Defendant's operation of train cars, which" "routinely discharge" pollutants, "systematically and continually violates the CWA prohibition of unauthorized discharges." *Id.* at *20. The court noted that requiring the plaintiffs to show use at every single affected waterbody would "undoubtedly be a herculean task," and it found such a showing "asks too much," "at least at this early stage of the litigation." *Id.* at *18. Instead, the plaintiffs' general allegations sufficed at the pleading stage. *Id.* at *20–21.

In *FSEEE*, the plaintiff brought an unpermitted discharge lawsuit against the Forest Service for discharging fire retardant from aircraft into waterbodies throughout ten states. 674 F. Supp. 3d at 962, 964. Like *BNSF Railway*, at summary judgment the court found the plaintiff's members' specific use of a smaller subset of waterbodies adversely affected by the Forest Service's illegal discharges was "sufficiently representative of the entire area that is potentially affected." *Id.* at 963–64.

The Air Force ignores these persuasive authorities, attempts to distinguish *Alaska Center for the Environment*, and analogizes to one out-of-circuit district court case; these efforts are

misguided. ECF No. 22 at 22–25. With these arguments, the Air Force seeks to impose an enormous burden on ONDA of inventorying use at the hundreds of waterbodies in its pleading. ECF No. 18 at 41–52 (identifying waterbodies in the Paradise North Area).

For *Alaska Center for the Environment*, the Air Force claims that the Ninth Circuit found standing only in the remedy phase of a state-wide regulatory challenge, not the liability stage of an unpermitted discharge case, but this distinction is irrelevant for two reasons. ECF No. 22 at 22–23. First, the entire purpose of establishing liability is to obtain the remedy—indeed any ultimate remedy must be narrowly tailored to address the liability found. *See Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011). Second, as the court explained in *BNSF Railway* when rejecting a nearly identical argument, "[t]he Ninth Circuit [holding] in *Alaska Center for the Environment*" "was based on the fact that EPA's failure to implement CWA provisions would be felt across every waterway within the state." 2016 U.S. Dist. LEXIS 147786, at *11–12. That is the case here. *Id.*; ECF No. 18 ¶¶ 11, 12 (alleging discharges adversely impact all waterbodies throughout the Paradise North Area"), 13, 35–41.

The Air Force further argues *Alaska Center for the Environment* runs afoul of the principle that standing is not dispensed of in gross. ECF No. 22 at 23–24. This Court should reject that distinction for the reasons articulated above—while there are individual discharges at issue here, the Air Force's unpermitted discharges "would be felt across every waterway within" the Paradise North Area. *BNSF Ry.*, 2016 U.S. Dist. LEXIS 147786, at *11–12. Moreover, the Air Force misreads Supreme Court case law. As the Tenth Circuit has explained, the "Supreme Court has [never] required an environmental plaintiff to show it has traversed every bit of land that will be affected by a challenged" action. *Palma*, 707 F.3d at 1155. Those cases simply

require that, at summary judgment or thereafter, a plaintiff cannot demonstrate standing by

showing its members use "*unspecified portions* of an immense tract of territory" or portions that

were "not perceptibly affected by the unlawful action." *Id.* at 1156 (citing *Lujan*, 504 U.S. at

566; *Nat'l Wildlife Fed'n*, 497 U.S. at 889). These cases simply do not require ONDA to

inventory every single location adversely impacted by the discharges for standing. *See id.*

The Court should likewise reject the Air Force's attempt to liken this case to *Center for*

*Biological Diversity v. U.S. Department of the Interior*. ECF No. 22 at 24–25 (citing No. 22-cv-

01716 (TSC), 2023 U.S. Dist. LEXIS 195761 (D.D.C. Nov. 1, 2023)). That case is inapposite

because it involved challenges to thousands of unconnected, **separate agency actions** approving

drilling permits. 2023 U.S. Dist. LEXIS 195761, at *4–6.[2] Here, however, ONDA alleges one

defendant repeatedly conducts the same activity over and over again in one adversely impacted

area. *See BNSF Ry.*, 2014 U.S. Dist. LEXIS 200930, at *20 (explaining this is "one central

claim" of "continually violat[ing] the CWA"). This is plainly not a case of challenging

numerous, separate agency actions.

    **D.**    <u>**ONDA Has Sufficiently Alleged Organizational Standing Stemming from an**</u>
<u>**Informational Injury**</u>.

The Air Force argues that ONDA has failed to establish organizational standing, but it

incorrectly focuses solely on the "diversion of resources" theory of organizational standing. ECF

No. 22 at 25–27. ONDA has properly pled organizational standing based on informational injury,

not injury from diverting resources. ECF No. 18 ¶¶ 10, 20.

In addition to representational standing, an organization can have standing in its own

right, provided it suffers an injury that is traceable to the defendant and redressable by a court.

---

[2] Another difference is that the plaintiffs in that lawsuit did not assert its members used the actual affected areas, but nearby areas. *Id.* at *13–14. Here, ONDA alleges members use the adversely impacted area. *Supra* at 28.

*See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024). Like an individual, there are many ways an organization can be injured. One way is by having to divert resources from its mission. *See* ECF No. 22 at 26. Another way is through the deprivation of information. *Inland Empire Waterkeeper*, 17 F.4th at 833 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998)); *see also Food & Drug Admin.*, 602 U.S. at 394–96 (finding plaintiff failed to show "diversion of resources" injury and refusing to assess informational injury because plaintiff had not claimed such injury). For an informational injury, a plaintiff has standing where a defendant violates a statute that "provides a right to information, the deprivation of which 'result[s] in an informational harm[.]'" *Inland Empire Waterkeeper*, 17 F.4th at 833 (collecting cases); *see Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 544–46 (6th Cir. 2004).

       The CWA provides a right to information around monitoring and reporting of discharges sufficient for standing. *Inland Empire Waterkeeper*, 17 F.4th at 833; *Am. Canoe Ass'n*, 389 F.3d at 546. As relevant here, the Clean Water Act prohibits discharges, unless those discharges are in compliance with an NPDES permit. 33 U.S.C. §§ 1311(a), 1342. NPDES permits, in turn, **must** impose monitoring and reporting requirements. *E.g.*, 33 U.S.C. § 1318; 40 C.F.R. §§ 122.41(j)–(*l*), 122.44(*i*), 122.48; *see* 33 U.S.C. § 1342 (authorizing NPDES permit if it meets the requirements of section 308, 33 U.S.C. § 1318). These requirements are "important" and "serve the public's substantive interest in clean water and the environment" because they are "the only way in which compliance with discharge limitations can be guaranteed." *Gill v. LDI*, 19 F. Supp. 2d 1188, 1195 (W.D. Wash. 1998); *Inland Empire Waterkeeper*, 17 F.4th at 833; *Sierra Club v. Simkins Indus., Inc.*, 847 F.2d 1109, 1115 (4th Cir. 1988) (finding such requirements "central to adequate administration and enforcement" under the CWA). Congress has therefore chosen to

"elevate" the public's interests in monitoring and reporting requirements by providing a right to access such reports and "by providing a cause of action to affected citizens" under the CWA. *Inland Empire Waterkeeper*, 17 F.4th at 833; *Simkins*, 847 F.2d at 1115 ("Congress has provided that these records be made generally available, with some exceptions, to" "the public."); 33 U.S.C. § 1318(b).

By unlawfully discharging without a permit, the Air Force has deprived ONDA of monitoring and reporting information that would be required if the Air Force obtained a permit. Indeed, ONDA "has been actively engaged in a variety of educational and advocacy efforts to improve water quality to address sources of water quality degradation in the waters of the Owyhee River and its many tributaries throughout the Paradise North Area." ECF No. 18 ¶¶ 10, 20. If the Air Force lawfully monitored its discharges, ONDA could use that information to assist "in its efforts to educate and advocate for greater environmental protection" in the Paradise North Area. *Id.* ¶ 20. However, because the Air Force discharges without a CWA permit, and accordingly does not monitor and report as required by any CWA permit, ONDA is "deprived of that information" and its "organizational interests have been adversely affected by the Air Force's violations." *Id.* ¶ 20; *see Inland Empire Waterkeeper*, 17 F.4th at 833.

Courts have found similar injuries sufficient for standing purposes where the defendant had the required NPDES permit but was violating reporting and monitoring requirements. *See, e.g.*, *Simkins*, 847 F.2d at 1112–13 (finding plaintiff had standing where defendant failed to monitor and report its discharges as required by its NPDES permit, thereby preventing plaintiff and members from "know[ing] the full extent of pollution in the river"); *Inland Empire Waterkeeper*, 17 F.4th at 832–33. It would be incongruous to find that this deprivation of information constitutes an injury for standing purposes where the defendant had, but was

violating, an NPDES permit, but not where the defendant altogether failed to obtain the permit. District courts have accordingly found such injury applicable to unpermitted discharge cases. *See, e.g.*, *PennEnvironment v. PPG Indus., Inc.*, 964 F. Supp. 2d 429, 447–48 (W.D. Pa. 2013); *Winyah Rivers All. v. Active Energy Renewable Power, LLC*, 579 F. Supp. 3d 759, 766 (E.D.N.C. 2022).

These injuries are plainly traceable to the Air Force because it is the Air Force's failure to obtain a CWA permit for its discharges, and its consequent failure to monitor and report, that deprives ONDA of the information. *See id.* ¶¶ 20, 45 (asking the Air Force to quantify the amount of pollution), 52–54, 58. This Court can remedy that violation by ordering the Air Force to obtain a permit before it continues its discharges because that permit would necessarily impose monitoring and reporting requirements on any discharges. *Id.* ¶¶ B, D. Accordingly, ONDA has sufficiently alleged standing based on its informational injury. *See Am. Canoe Ass'n*, 389 F.3d at 546; *Inland Empire Waterkeeper*, 17 F.4th at 833.

Because the Air Force's Motion focuses on an injury ONDA did not allege (diversion of resources), its challenge to ONDA's organizational standing is largely irrelevant. *See* ECF No. 22 at 26–27. Indeed, the Air Force's primary argument is that ONDA has failed to allege how it has expended additional funds based on the illegal discharges and the specific location of the discharges. *Id.* That, however, is irrelevant to ONDA's informational injury.

The only relevant argument from the Air Force about ONDA's informational injury is that it is not caused by the Air Force because it "turns on the independent decision-making of a third-party, the Oregon Department of Environmental Quality," which "may or may not include" monitoring and reporting conditions in a CWA permit. ECF No. 22 at 27. "Causation may be found even if there are multiple links in the chain connecting the defendant's unlawful conduct

to the plaintiff's injury," so long as the links are "plausible." *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014). Here, there is no speculation required because any CWA permit issued by the Oregon Department of Environmental Quality or another agency must require monitoring that is representative of the discharges and must impose reporting requirements. 33 U.S.C. § 1318; 40 C.F.R. §§ 122.41(j)–(*l*), 122.44(*i*), 122.48; *see* 33 U.S.C. § 1342; *see Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1082 (9th Cir. 2010) ("[W]e presume that agencies will follow the law."); *Mendia*, 768 F.3d at 1013; *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019) (explaining plaintiff establishes causation by showing "third parties will likely react in predictable ways"). Accordingly, the Air Force's failure to obtain a permit for its discharges necessarily deprives ONDA of monitoring and reporting information.

In sum, the Court should find that ONDA sufficiently alleged organizational standing.

## II.    <u>ONDA Stated a Claim for Relief.</u>

The Air Force now for the first time argues ONDA has failed to state a claim. ECF No. 2 at 28. Its argument is largely derivative of its standing argument; namely, it faults ONDA for failing to allege location-specific details. This argument fails for three reasons.

First, "location of the discharges" is not an element of a CWA unpermitted discharge claim. Instead, the elements are: (1) the addition—i.e., the discharge (2) of a pollutant (3) to navigable waters, defined as "waters of the United States" (4) from a point source. *See* 33 U.S.C. § 1362(12)(A); *Comm. to Save Mokelumne River v. East Bay Mun. Util. Dist.*, 13 F.3d 305, 308 (9th Cir. 1993) (explaining that "adding" and "discharging" are synonymous); *Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526, 532 (9th Cir. 2001). ONDA alleges that the Air Force discharges pollution, specifically chaff and flares, from a point source, the military aircraft, to waters of the United States in the Paradise North Area during training missions. ECF No. 18

¶¶ 12, 42. ONDA has identified waterbodies throughout the Paradise North Area that receive discharges of pollution, including several waterbodies that unquestionably qualify as waters of the United States. *Id.* ¶¶ 12 (map showing several interstate waters, including, to name a few, the mainstem Owyhee River, North Fork Owyhee River, Middle Fork Owyhee River, and Tent Creek), 13, 35–41, 58 (alleging discharges to the "Owyhee River and other waters of the United States in the" Paradise North Area); 33 U.S.C. § 1362(7); 40 C.F.R. § 120.2(a) (explaining waters of the United States include, inter alia, "interstate waters" and "tributaries of waters" "that are relatively permanent, standing, or continuously flowing"). ONDA has alleged facts to state an unpermitted discharge claim that is "plausible on its face." *See Twombly*, 550 U.S. at 555–56, 570.

The Air Force has identified **no support** for its assertion that ONDA must plead the precise location of a discharge to state an unpermitted discharge claim. *See* ECF No. 22 at 28. And as indicated above, in *Forsgren*, the Ninth Circuit had no issue holding that the Forest Service violated the CWA, even though there was no discussion of individual waterbodies, let alone precise discharge locations. 309 F.3d at 1183–85, 1193; *see also* 163 F. Supp. 2d at 1240 (explaining evidence). And it makes sense that identifying the specific locations of discharges is not an element of the claim, precisely because of mobile point sources, like "aircraft," "vessels," and "rolling stock." 33 U.S.C. § 1362(14). Many vessels, like ships, move throughout waterbodies, necessarily discharging pollutants, like ballast water, intermittently as they travel. *E.g.*, *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 808 F.3d 556, 561–62 (2d Cir. 2015). Requiring the government or citizens to tie a vessel's discharges to precise locations to enforce against plainly illegal conduct, even though vessels move throughout waterbodies discharging

pollution in a manner prohibited under the Act, clearly undermines the CWA. *See Chevron*, 834
F.2d at 1525 (explaining courts should "liberally" handle citizen suits).

Second, the Air Force fails to appreciate the stage of the litigation, and the reasonable
inferences this Court should draw in ONDA's favor. At this stage of the litigation, "[s]pecific
facts are not necessary." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S.
at 555, 570). Rather, this court must "accept as true all of the factual allegations" contained in
ONDA's pleadings and make "all reasonable inferences" in ONDA's favor. *Id.* at 93–94 (citing
*Twombly*, 550 U.S. at 555–56); *U.S. ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 676 (9th Cir.
2018) (citing *Iqbal*, 556 U.S. at 678); *AE ex rel. Hernandez*, 666 F.3d at 636. The Air Force's
effort to require ONDA to plead detailed facts to support its claim is simply not what is required
at this stage, and it is inconsistent with the Federal Rules of Civil Procedure.

Instead, Rule 8 requires that complaints contain "a short and plain statement of the claim
showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be
simple, concise, and direct." *Id.* 8(d)(1). Courts dismiss complaints that do not comport with
those requirements, including a pleading that "says *too much*." *Knapp v. Hogan*, 738 F.3d 1106,
1109 (9th Cir. 2013); *see, e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996); *Nevijel v.
N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). The Air Force's effort to require, at the
pleading stage, identification of every location where its aircraft have discharged materials
during the applicable six-year limitations period—since December 15, 2017—is wholly
inconsistent with these requirements and should not be imposed here. *See* 28 U.S.C. § 2401(a);
*Doe v. Holy See*, 557 F.3d 1066, 1074 (9th Cir. 2009) ("We do not impose a heightened pleading
standard in the absence of 'an explicit requirement in a statute or federal rule.'" (citation
omitted)).

Third, the Air Force's argument is inconsistent with the purpose of pleadings. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Kerry*, 710 F.3d at 998; Fed. R. Civ. P. 8(a), (d). The pleading plainly satisfies this purpose by alleging that the Air Force has not had the required NPDES permit for its discharges during the last six years, identifying the waters within the geographic area at issue, and alleging that the Air Force violates the CWA every time it releases flares or chaff while flying over those waters. ECF No. 18 ¶¶ 12, 54, 58. The Air Force obviously understands ONDA's claim sufficiently to defend itself.

Furthermore, the Air Force alone has the information it demands here. The Air Force unquestionably maintains detailed records of its training exercises; records it protects under assertions of national security. If the Air Force had an NPDES permit as required, the public would have greater access to that information through mandatory monitoring and reporting requirements. *See supra* at 35–38. The Court should reject the Air Force's effort to exploit that asymmetry of information, created by its own failure to obtain the required permit. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (explaining courts should "take account of [plaintiffs'] limited access to crucial information" at the pleading stage where "inside information" is not available "unless and until discovery commences").

The Ninth Circuit has rejected similar arguments in the context of pre-suit notice requirements. Similar to notice pleading standards of Rule 8, pre-suit notice under the CWA must provide "sufficient information to permit the recipient to identify the alleged violations and bring itself into compliance," but is not required to "list every specific" "detail of every violation." *S.F. BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir. 2002) (citations

and internal punctuation omitted); *see also* 40 C.F.R. § 135.3(a). In *Tosco*, the notice informed

the defendant that it violated the CWA because it discharged petroleum coke "spilled during ship

loading" and "blown by the wind" whenever "the wind has been sufficiently strong." 309 F.3d at

1158–59. The defendant argued the notice was inadequate for failing to identify the dates of

violations. *Id.* Noting that the defendant "is obviously in a better position than [the plaintiff] to

identify the exact dates, or additional dates, of its own ship loading," the court found the notice

letter sufficient because it adequately "inform[ed] [the defendant] about what it is doing wrong."

*Id.* at 1158–59 (citations omitted). The same is true here—the Amended Complaint contains far

more detail than necessary to inform the Air Force of how it is violating the CWA. *See BNSF*

*Ry.*, 2014 U.S. Dist. LEXIS 200930 at *10–17 (explaining notice of unpermitted discharge

sufficient where it "provided lengthy descriptions of the nature of the violations" and "the

specific pollutants allegedly discharged" but did not specify when and where the discharges

occurred).

The Court should reject the Air Force's contention that the Amended Complaint fails to

state a claim under Rule 12(b)(6).

**III.    If the Court Seeks Greater Detail, ONDA Respectfully Requests the Opportunity to Conduct Discovery and Amend.**

To the extent the Court finds the pleadings lacking in any manner, the Court should grant

leave to amend. *See Maya*, 658 F.3d at 1072 (for Rule 12(b)(1), explaining court must grant

leave unless "it is clear" amendment will not save complaint); *Lopez v. Smith*, 203 F.3d 1122,

1127 (9th Cir. 2000) (same for Rule 12(b)(6)).

To the extent the Court finds the pleading must identify specific locations of discharges,

ONDA respectfully requests leave to conduct jurisdictional discovery. Courts reject such

requests where a complaint fails to adequately state a claim, but the Amended Complaint is

plainly sufficient under Rules 8 and 12(b)(6) because it adequately informs the Air Force of the claim, particularly given the Air Force's superior knowledge of its challenged conduct. *See Mujica v. AirScan Inc.*, 771 F.3d 580, 589, 593 (9th Cir. 2014). While ONDA strongly believes that requiring the pleading to specifically identify discharge locations is inconsistent with applicable standards, "[j]urisdictional discovery 'should ordinarily be granted'" if the Court disagrees and finds that "a more satisfactory showing of [such] facts is necessary" for standing purposes under Rule 12(b)(1). *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023) (citing *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)); *Degross v. Hunter*, No. 24-5225 DGE-RJB, 2024 U.S. Dist. LEXIS 119377, at *9–10 (W.D. Wash. July 8, 2024). Based on discussions with a retained expert, ONDA expects such efforts would include discovery on the dates and times of chaff and flare releases during the six-year limitations period; the location, speeds, altitudes, and directions of the aircraft; and the makeup of the materials released. The expert would then develop opinions on specific discharge locations. Such discovery should be allowed because it is not premised on a "mere hunch that discovery might yield jurisdictionally relevant facts," but instead on, among other things, the Air Force's own admission that it conducts the activities and that its discharged pollution "could collect on [affected] water surfaces." *See Yamashita*, 62 F4th at 507 (quotation and citation omitted); ECF No. 18 ¶ 43; *see also Forsgren*, 309 F.3d at 1183–85, 1193 (concluding violation of CWA based on very similar evidence); *Forsgren*, 163 F. Supp. 2d at 1240 (citing evidence).

## **<u>CONCLUSION</u>**

For the foregoing reasons, ONDA respectfully requests that the Court deny the Air Force's Motion.

RESPECTFULLY SUBMITTED this 18th day of October 2024.

KAMPMEIER & KNUTSEN PLLC

By: s/ Brian A. Knutsen
    Brian A. Knutsen, OSB # 112266
By:  s/ Emma Bruden
    Emma Bruden, OSB # 163525
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
Telephone: (503) 841-6515 (Knutsen)
          (503) 719-5641 (Bruden)
Email: brian@kampmeierknutsen.com
     emma@kampmeierknutsen.com
OREGON NATURAL DESERT ASSOCIATION

Peter M. ("Mac") Lacy, OSB # 013223
2009 NE Alberta St., Ste. 207
Portland, OR 97211
Telephone: (503) 525-0193
Email: lacy@onda.org

*Attorneys for Plaintiff*
*Oregon Natural Desert Association*